**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IVAN CAPLAN, JOHN DARGER,
MATTHEW GEORGE, RALPH G.
POTENTE, ROBERT G. RIVIERE, MARY W.
RIVIERE, MELISSA ROTH, THOMAS
SCHWAN, and PETER TURKL,

                              Plaintiffs,

                    -against-

SEAN DOLLINGER, LORNE RAPKIN,
ALEXANDRA "ALEX" HOFFMAN,
KUMAR ABHISHEK, SHARIQ KHAN,
JULIA J. FRANK, PLANTX LIFE INC., VEG
HOUSE HOLDINGS INC., DOLLINGER
HOLDINGS LLC, LQR HOUSE INC., CAY
INNOVATIONS LTD., PLANTX MIDWEST
INC., VEG HOUSE ILLINOIS INC.,
PLANTX LIVING INC., VEGASTE
TECHNOLOGIES US CORP., LITTLE
WEST LLC, PLANT-BASED DELI LLC, WS
WEST LLC, VEG HOUSE HOLDINGS GP
INC., and NEW DELI HILLCREST LLC,

                              Defendants.

No. 1:24-cv-07996

VERIFIED COMPLAINT

JURY TRIAL DEMANDED

Through undersigned counsel Gusrae Kaplan Nusbaum PLLC, "**Plaintiffs**" Ivan

Caplan, John Darger, Matthew George, Ralph G. Potente, Robert G. Riviere, Mary W.

Riviere, Melissa Roth, Thomas Schwan, and Peter Turkl bring this "**Complaint**" against

"**Defendants**" Sean Dollinger, Lorne Rapkin, Alexandra "Alex" Hoffman, Kumar

Abhishek, Shariq Khan, Julia J. Frank, "**PlantX**" Life Inc., "**Veg**" House Holdings Inc.,

Dollinger Holdings LLC, "**LQR**" House Inc., "**Cay**" Innovations Ltd., "**PlantX Midwest**"

Inc., Veg House Illinois Inc. ("**Veg Illinois**"), "**PlantX Living**" Inc., "**Vegaste**" Technologies US Corp., "**Little West**" LLC, "**Plant-Based Deli**" LLC, "**WS West**" LLC, Veg House Holdings GP Inc. ("**Veg GP**"), and "**New Deli**" Hillcrest LLC.

1.     Defendants' violations of federal securities and racketeering laws, as well as their breaches of their contracts with Plaintiffs and conversion of Plaintiffs' investments, entitle Plaintiffs to no less than $1.95 million in damages before interest, costs, and fees.

2.     Defendants Sean Dollinger, Lorne Rapkin, Alexandra "Alex" Hoffman, and Kumar Abhishek misappropriating other peoples' money by continually forming and swapping ownership in companies, hiding self-dealing transactions, and convincing unsuspecting third parties to buy those companies' stock at manipulated prices.

3.     In January 2024, Plaintiffs paid $650,000 to buy 650,000 shares of Defendant Veg's common stock from Defendant PlantX.

4.     Plaintiffs bought their Veg shares pursuant to eight identical Share Purchase Agreements ("**SPAs**") executed by Defendant Lorne Rapkin, who signed as PlantX's "Chief Executive Officer," and Defendant Alex Hoffman, who signed as Veg's "Chief Executive Officer."

5.     Although Mr. Rapkin signed the SPAs as PlantX's "Chief Executive Officer," next to Mr. Rapkin's signatures, those same documents instructed Plaintiffs that PlantX's "Address for Notice" was "Sean Dollinger, CEO."

6.     The Entity Defendants and Mr. Dollinger, himself, hold Mr. Dollinger out as PlantX's "Founder."

7. The SPAs required PlantX to, <u>inter alia</u>, (1) keep Plaintiffs' cash until Veg completed an initial public offering ("**IPO**") and (2) refund Plaintiffs' investments unless Veg completed that IPO by May 2024 (the "**Repurchase Date**").

8. The SPAs also required Veg to register Plaintiffs' shares for resale without restriction.

9. Veg neither completed the IPO nor registered Plaintiffs' shares.

10. Yet PlantX, through Mr. Dollinger, has continually rebuffed Plaintiffs' repurchase inquiries.

11. However, PlantX and Mr. Dollinger have never denied that PlantX must repay Plaintiffs.

12. Instead, they have repeatedly said that PlantX no longer has Plaintiffs' money.

13. Initially, Mr. Dollinger asked Plaintiffs to execute a contract amending the Repurchase Date from May to October 2024.

14. After Plaintiffs refused to do so, Mr. Dollinger continually claimed that "we" would start repaying Plaintiffs in September, then in October.

15. Although Mr. Dollinger personally responded to Plaintiffs' inquiries from the email address <u>sean@plantx.com</u>, with an email signature of "PlantX Management Sean Dollinger Founder PlantX.com," he also initially wrote—in the third person—"Sean Dollinger is not on the board of either companies [PlantX or Veg] or management."

16. However, Mr. Dollinger personally continued to reply to Plaintiffs' inquiries, generally referring to PlantX and Veg as "we" and "us."

17.    On October 9, Plaintiffs noted Mr. Dollinger's continually-shifting promises and demanded that he and PlantX return Plaintiffs' money by the end of the week.

18.    Despite personally handling all of Plaintiffs' inquiries over the previous months—and despite continually responding to Plaintiffs' inquiries by conflating PlantX and Veg and using the pronouns "we" and "us" to discuss who needed to repay Plaintiffs—Mr. Dollinger responded, "This has nothing to do with me. I am founder of the company but have had 0 to do with the board or management of the company."

19.    Mr. Dollinger also repeatedly emphasized that PlantX is a Canadian company, even though the SPAs instructed Plaintiffs to direct all inquiries to Mr. Dollinger's address in Miami Beach, Florida.

20.    After the Repurchase Date, Plaintiffs learned that Messrs. Dollinger and Rapkin and Ms. Hoffman have long worked together to wrongfully take investors' and lenders' money by forming and engaging in sham transactions with related companies, diverting investors' funds to overseas accounts and entities, and, upon information and belief, manipulating their controlled companies' stock, which trades on the Frankfurt Stock Exchange, Canadian Stock Exchange, and Nasdaq.

21.    As discussed in detail below, all of the Entity Defendants are alter egos of each other.

22.    Meanwhile, Mr. Dollinger and the Entity Defendants never would have been able to steal Plaintiffs' money without Ms. Hoffman and Mr. Rapkin's support: the three have continually swapped titles and ownership over the Entity Defendants, solely to impede Plaintiffs and other victims from ever recovering their losses.

23.     To cement their total control over the Entity Defendants, Messrs. Dollinger and Rapkin and Ms. Hoffman primarily hire and transfer assets among close friends and family, including Mr. Dollinger's uncle, Ms. Hoffman's younger sister, and Mr. Rapkin's father.

24.     In fact, Messrs. Dollinger and Rapkin are first cousins.

25.     Mr. Rapkin and Ms. Hoffman also are first cousins.

26.     Upon information and belief, Defendants have worked together to move PlantX's assets—including Plaintiffs' cash—into related Entity Defendants in order to render PlantX insolvent and unable to return Plaintiffs' investments.

27.     For example, the SPAs required PlantX to "retain and not expend, invest, restrict or otherwise dispose of" Plaintiffs' money before Veg closed its IPO.

28.     Yet in September and October 2024, Mr. Dollinger has repeatedly said that PlantX does not have the money to buy back Plaintiffs' shares.

29.     Accordingly, Plaintiffs not only sue PlantX and Veg for breach of contract, but also all of the other Defendants for racketeering, securities fraud, and related equitable and preliminary and permanent injunctive relief.

## The Plaintiffs, Jurisdiction, and Venue

30.     Plaintiffs bought $650,000 of Veg securities from PlantX.

31.     Plaintiff Ivan Caplan is a Maryland citizen and bought $50,000 of Veg securities from PlantX.

32.     Plaintiff John Darger is a Utah citizen and bought $25,000 of Veg securities from PlantX.

33.     Plaintiff Matthew George is a Pennsylvania citizen and bought $25,000 of Veg securities from PlantX.

34.     Plaintiff Ralph G. Potente is a New York citizen and bought $50,000 of Veg securities from PlantX.

35.     Plaintiffs Robert G. and Mary W. Riviere are Louisiana citizens and bought $50,000 of Veg securities from PlantX.

36.     Plaintiff Melissa Roth is a New York citizen and bought $100,000 of Veg securities from PlantX.

37.     Plaintiff Thomas Schwan is a New York citizen and bought $300,000 of Veg securities from PlantX.

38.     Plaintiff Peter Turkl is a New York citizen and bought $50,000 of Veg securities from PlantX.

39.     Every Plaintiff bought his or her respective Veg securities pursuant to January 2024 SPAs signed by Defendants Rapkin and Hoffman with an "Address for Notice" with "[a]ttention" to Defendant Dollinger at "6800 Indian Creek Dr. Suite 1E Miami Beach, Florida 33141" and by email to "sean@plantx.com."

40.     The SPA's "Governing Law" clause provides that it "shall be governed by and construed and enforced in accordance with the internal laws of the State of New York." SPA § 5.6.

41.     The SPAs require all disputes concerning the contracts, "whether brought against a party hereto or its respective Affiliates, directors, officers, shareholders, employees[,] or agents," to be heard in Manhattan federal or state court. Id.

42.     The SPA required Plaintiffs to wire their investments to a Citibank account in Manhattan.

43.     The SPAs further provide that the parties "irrevocably waive[] personal service of process and consent[] to process being served" by mail "at the address in effect for notices to it under th[e SPA]." SPA § 5.6.

44.     The SPA's "Address for Notice" directs Plaintiffs to address legal proceedings and other complaints to Defendant "Sean Dollinger, CEO" at "6800 Indian Creek Drive Suite 1E Miami Beach, Florida 33141" (the "**SPA Condo**").

45.     6800 Indian Creek Drive does not contain any units called "suites."

46.     The building's developers named it "Monaco Yacht Club & Residences" and advertise its units as "39 luxury condos including 37 residences and 2 half-floor penthouses."

47.     Indeed, the SPA Condo is a two-bedroom residential condominium whose mailing address is "Unit 1E," not "Suite 1E."

48.     The SPA last sold for $3.3 million on November 10, 2022.

49.     Upon information and belief, the SPA Condo is Mr. Dollinger's residence.

**The Entity Defendants Share Owners, Executives, Directors, Operations, and Assets**

50.     Defendants defrauded Plaintiffs by, <u>inter alia</u>, failing to disclose their countless conflicts of interest or history of defrauding investors like Plaintiffs; structuring PlantX and Veg's ownership and the SPAs' structure to try to hide behind PlantX's foreign incorporation and claim that Plaintiffs had no recourse against a foreign company; and using Plaintiffs' money to fund their own personal interests instead of helping Veg complete its IPO, including by hiring and paying Messrs. Dollinger and Rapkin and Ms. Hoffman's direct family members.

51.     Defendant Alexandra "Alex" Hoffman signed the SPAs as Veg's Chief Executive Officer.

52.     Ms. Hoffman is a California or Florida resident and, upon information and belief, a Canadian citizen.

53.     Besides being Defendant Veg's Chief Executive Officer, Ms. Hoffmann also is a Veg director; a director and Chief Marketing Officer ("**CMO**") of Defendant PlantX; a director and employee of Defendant LQR; an "authorized person" of Defendant Dollinger Holdings; Defendant New Deli's only member; and Defendant Vegaste's Secretary and CMO.

54.     Upon information and belief, Defendant Lorne Rapkin is a Canadian resident and citizen.

55.     Mr. Rapkin holds himself out as a partner of a Toronto accounting firm called "Rapkin Wein LLP."

56.     On his accounting firm's website, Mr. Rapkin boasts that he "[c]om[es] from an entrepreneurial background[ and] has the experience to assist clients with making critical decisions."

57.     Mr. Rapkin also signed the SPAs as PlantX's "Chief Executive Officer."

58.     However, the SPAs identified Defendant Sean Dollinger as PlantX's "CEO," instructing Plaintiffs to direct all SPA-related inquiries and demands to Mr. Dollinger personally.

59.     Besides being PlantX's "Chief Executive Officer," Mr. Rapkin also is a director of Veg; New Deli's registered agent; and Vegaste's President, Treasurer, and Chief Financial Officer ("**CFO**").

60.     Mr. Dollinger is a Florida resident and, upon information and belief, a Canadian citizen.

61.     Besides holding himself out as PlantX's "Founder," Mr. Dollinger also founded Defendants Veg, LQR, and Dollinger Holdings; is a $180,000-per-year "consultant" for Veg; has been a $200,000-per-year "consultant" for PlantX; and is the sole director and executive officer of Defendant Veg Illinois, which is wholly-owned by Veg.

62.     Defendant "**PlantX**" Life Inc. is a British Columbia company headquartered at the SPA Condo.

63.     PlantX's securities trade as "VEGA" on the Canadian Securities Exchange and "WNT1" on the Frankfurt Stock Exchange.

64.    In 2023, PlantX exchanged numerous wholly-owned subsidiaries with Veg and received six million Veg common stock shares in return.

65.    Defendant "**Veg**" House Holdings Inc. is a Cayman Islands company headquartered in Florida.

66.    Defendants Hoffman, Khan, Frank, and Rapkin have signed Veg's filings with the Securities and Exchange Commission ("**SEC**").

67.    In an April 2024 SEC filing, Veg represented that Mr. Dollinger is its "founder and special advisor" and, as of the filing, owned 400,000 of Veg's common shares.

68.    In the same filing, Veg represented that its principal executive offices are located at 2699 Stirling Road, Suite A105, Fort Lauderdale, Florida 33312 ("**Stirling Road**"); its "agent for service" was Ms. Hoffman at 6800 Indian Creek Drive, Suite 101, Miami Beach, Florida 33141 (the "**Veg Condo**"); and that the Veg Condo also was its "corporate headquarters," which Veg subleased from December 1, 2022 through December 30, 2023.

69.    Upon information and belief, Veg is directly or indirectly "subleasing" its headquarters from Mr. Dollinger.

70.    Veg has failed to disclose that its Veg Condo sublease is, upon information and belief, a related-party transaction.

71.    Stirling Road is the business address of a lawyer who has represented Mr. Dollinger and his companies for over a decade.

72.    The Veg Condo is a one-bedroom, 1.5-bathroom condominium in the same building as the SPA Condo.

73.    The Veg Condo last sold for $615,000 on October 25, 2022.

74.    Upon information and belief, Mr. Dollinger and / or one of the Defendants also owns the Veg Condo.

75.    Veg withdrew its Nasdaq IPO registration papers on June 13, 2024.

76.    Mr. Dollinger formed Defendant "**Dollinger Holdings**" LLC in Florida on February 12, 2020.

77.    Dollinger Holdings's principal address is Stirling Road.

78.    Dollinger Holdings's 2024 annual report states that Mr. Dollinger and Ms. Hoffman are its "authorized persons," with respective addresses at Stirling Road and 6442 Coldwater Canyon Avenue #200, North Hollywood, California 91606.[1]

79.    Defendant "**LQR**" House Inc. is a Florida corporation headquartered at the SPA Condo.

80.    LQR represents that Mr. Dollinger is its CEO and a director, Ms. Hoffman is a director, Ms. Hoffman's younger sister Jaclyn is its CMO, and Defendant Kumar Abhishek is its Chief Financial Officer ("**CFO**").

81.    Jaclyn Hoffman also purports to work for Dollinger Enterprises and PlantX.

---

[1] This North Hollywood address also is the address of non-party "**Falcon**" Marketing LLC, which the Entity Defendants have represented to be Ms. Hoffman's former employer. From January 2021 through June 2022, LQR paid Falcon $234,000 for "website development, design & social media management services."

82.     Through Defendant and Bahamas corporation "**Cay Innovations**" Ltd., Mr. Abhishek acquired 2.25 million Veg shares as PlantX's "repayment" of a "debt."

83.     Soon thereafter, Mr. Abhishek "sold" 850,000 Veg shares to Mr. Rapkin's father, Myron Rapkin.

84.     Defendant "**PlantX Midwest**" is an Illinois corporation headquartered at 804 West Montrose Avenue, Chicago, Illinois 60613 and a wholly-owned subsidiary of PlantX.

85.     Defendant Veg House Illinois Inc. also is an Illinois corporation headquartered at 804 West Montrose Avenue, Chicago, Illinois 60613 ("**Veg Illinois**"), but is a wholly-owned subsidiary of Veg.

86.     Veg formed Veg Illinois on February 27, 2023.

87.     Veg Illinois has leased 804 W. Montrose from PlantX Midwest and "will manage and operate the food hall" at that location.

88.     PlantX Midwest, meanwhile, runs and profits from Veg's e-commerce fulfillment center located in the same building.

89.     Defendants "**PlantX Living**" Inc., "**Vegaste**" Technologies US Corp., "**Little West**" LLC, "**Plant-Based Deli**," LLC, and "**WS West**" LLC previously were owned by PlantX and now are owned by Veg.

90.     PlantX Living is a British Columbia company and wholly-owned subsidiary of Veg.

91.     Vegaste is a Florida corporation and wholly-owned subsidiary of PlantX Living.

92.    Vegaste's principal place of business is Stirling Road.

93.    Mr. Rapkin is Vegaste's President, Treasurer, and CFO.

94.    Ms. Hoffman is Vegaste's Secretary and CMO.

95.    Little West, Plant-Based Deli, and WS West are California LLCs whose principal address is 2121 Bay Street Los Angeles, California 90021 and whose CEO is Ms. Hoffman.

96.    Defendant Veg House Holdings GP Inc., a Delaware corporation formed on June 20, 2024, is WS West's only member.

97.    Defendant Shariq Khan is Veg's CFO, Plant-Based Deli and Little West's only member, and WS West's registered agent.

98.    Mr. Khan also was the director of finance for Lifeist Wellness Inc. f/k/a "**Namaste**" Technologies Inc., which also was founded by Mr. Dollinger and a defendant in both American and Canadian securities fraud class action suits, as detailed infra.

99.    Mr. Abhishek, who owns Defendant Cay, also is Little West's and Plant-Based Deli's registered agent.

100.    Defendant "**New Deli**" Hillcrest LLC is a Florida LLC whose mailing address is Stirling Road and whose principal place of business is 3930 5th Avenue, San Diego, California.

101.    New Deli operates as a retail location that advertises itself as "XMarket."

102.    PlantX's website advertises "XMarket" as "a plant-based marketplace, with locations across Canada and the US," and a "PlantX Owned Brand."

103.    Ms. Hoffman is New Deli's only member and Mr. Rapkin is its registered agent.

104.    Defendant Julia J. Frank (with Messrs. Dollinger, Rapkin, Abhishek, and Khan and Ms. Hoffman, the "**Individual Defendants**") is Veg's Chief Operating Officer ("**COO**"), as well as  PlantX's COO and former CEO.

105.    Upon information and belief, Ms. Frank is a citizen and resident of Germany.

106.    Defendants PlantX, Veg, Dollinger Holdings, LQR, Cay, PlantX Midwest, Veg Illinois, PlantX Living, Vegaste, Little West, Plant-Based Deli, WS West, Veg GP, and New Deli (together, the "**Entity Defendants**") alter egos of each other and appear to have acted in concert to help the Individual Defendants steal Plaintiffs' investments.

107.    Among other problems, the Entity Defendants' securities and corporate filings—plus Mr. Dollinger's communications with Plaintiffs—confirm that the Entity Defendants disregard corporate formalities; intermingle funds; have common ownership, officers, directors, and personnel; share common office spaces, addresses, telephone numbers, and email addresses; are completely dominated by the Individual Defendants; have no independence in their business operations; are not treated as independent profit centers; engage in conflicted, interested transactions; and primarily engage in the Individual Defendants' business and for the Individual Defendants' benefit, not for the Entity Defendants' own independent interests.

108.    Upon information and belief, all Defendants worked in concert to misappropriate Plaintiffs' money and render PlantX insolvent.

109.    Moreover, upon information and belief, the Individual Defendants have used and continue to wrongfully use Plaintiffs' money as their own personal piggy banks instead of using Plaintiffs' funds as they had promised: to facilitate Veg's IPO.

110.    Defendants habitually engage in self-dealing and use investors' funds to pay their own close friends and family members, including by repaying a "loan" purportedly issued by Mr. Abhishek, who acts as a registered agent for multiple Entity Defendants, and sending some of the proceeds of that loan to Mr. Rapkin's father; spending over $4 million to buy two residences in the exact same waterfront Miami Beach condominium building; and paying salaries and "consulting" fees and issuing securities to close friends and family members, including Ms. Hoffman's siblings, Jaclyn and Greg.

111.    Defendants also have appointed Messrs. Dollinger and Rapkin's uncles as board directors of various Entity Defendants.

112.    Upon information and belief, Messrs. Dollinger and Rapkin and Ms. Hoffman formed New Deli—owned directly by Ms. Hoffman, not by an Entity Defendant—in order to divert any legitimate business profits from Veg subsidiaries (and Veg investors like Plaintiffs) to Messrs. Dollinger and Rapkin and Ms. Hoffman's own pockets.

113.    Mr. Dollinger's history of securities fraud and self-dealing suggest how this case's Defendants have defrauded Plaintiffs.

114.    For example, Mr. Dollinger and entities he founded and / or controlled have been the subject of at least two securities fraud class action suits.

115.    Both Canadian and American investors alleged that Mr. Dollinger used a public company—Namaste—to conduct undisclosed self-dealing and affiliate transactions, including by selling a wholly owned-subsidiary named "**Dollinger Enterprises**" US Inc. to Namaste's head of marketing.

116.    Mr. Dollinger's wife was Dollinger Enterprises's board chair and corporate secretary.

117.    Namaste settled the American case, including its Exchange Act Section 10(b) securities fraud and 20(a) control person liability claims, for $2.75 million.

118.    Namaste settled the Canadian case for an additional $2.15 million.

119.    The British Columbia Securities Commission has an open investigation into Mr. Dollinger's Namaste-related misconduct.

120.    Namaste's board fired Mr. Dollinger in 2019.

121.    In other SDNY cases, designer brands alleged that Mr. Dollinger, his wife, and companies that they controlled owned and marketed several websites that advertised and sold counterfeit Balenciaga, Bottega Veneta, Gucci, and Yves Saint Laurent purses, among others.

122.    Mr. Dollinger and his wife settled the claims against them and let the entity defendants default.

123.    Mr. Dollinger and his fellow Defendants continue to create new entities out of whole cloth in order to deceive potential investors like Plaintiffs.

124.    For example, PlantX.com lists "PlantX Owned Brands" to include not just Little West, Peter Rubi (now PlantX Midwest), and XMarket, but also several companies

that Plaintiffs have not named in this suit: Bloombox Club, Portfolio Coffee, Locavore Bar & Grill, Cloudburst Café.[2]

125. Defendants appear particularly interested in establishing cross-jurisdictional organizations in order to claim that investors cannot recover their money.

126. For example, in this case, Mr. Dollinger both used "we" and "us" to acknowledge that PlantX must repay Plaintiffs, yet repeatedly pointed to PlantX's Canadian incorporation to try to claim that Plaintiffs would never be able to recover their investments from PlantX.

127. In doing so, Mr. Dollinger ignored Defendants' interrelationships, as well as PlantX's own contractual consent to be served in Florida and appear in New York courts.

128. Defendants also chose to incorporate PlantX as a Canadian company and Veg as a Cayman Islands company in order to attend to dodge corporate responsibility while taking advantage of American investors, consumers, and markets.

129. For example, almost all of PlantX's and Veg's subsidiaries—including Vegaste, Veg Illinois, Plant-Based Deli, Little West, and WS West—are California, Illinois, or Florida entities.

130. And less than one month after PlantX defaulted on its obligation to repurchase Plaintiffs' securities, Defendants incorporated Veg House Holdings in Delaware.

---

[2] Plaintiffs will seek to add additional defendants if and when discovery reveals that those entities are proper parties to this action.

131.    Moreover, Veg's SEC registration statements emphasized that its intention was to trade on Nasdaq as a "foreign private issuer" so that it could tap American investors without subjecting itself to typical American disclosure, accounting, corporative governance, insider trading, and other investor-protective duties.

132.    Upon information and belief, Veg either never actually intended to consummate its American listing or withdrew its registration statement once Defendants realized that Veg would not qualify as a foreign private issuer, and therefore would have to subject itself to typical American disclosure, financial, and governance obligations.

133.    Indeed, in its April 2024 registration statement amendment, Veg disclosed that it would not be able to qualify as a foreign private issuer once (1) more than 50% of its outstanding voting securities were held by U.S. residents and (2) (a) the majority of its executive officers or directors were U.S. citizens or residents, (b) more than 50% of its assets were located in the United States, or (c) its business was administered principally in the United States.

134.    Veg knew or should have known it would never be able to qualify: its own and PlantX's American and Canadian securities filings confirm that the Entity Defendants' revenues overwhelmingly come from American assets and American purchases.

135.    Yet Defendants induced Plaintiffs' so-called "bridge" investments, promising that the sole purpose of Plaintiffs' investments was to help Defendants finish Veg's IPO (and even though Plaintiffs bought their Veg securities from PlantX).

136.    Despite their attempts to evade American jurisdiction, Defendants have repeatedly confirmed that the PlantX Enterprise runs on American money, markets, consumers, and victims.

137.    For example, in its most recent SEC filing, Veg represented that unless it completed its Nasdaq IPO, neither it nor its subsidiaries—which comprise Veg's entire business and revenue sources—would have the cash to carry on their business.

138.    More recently, Mr. Dollinger responded to Plaintiffs' repayment demands by claiming that PlantX does not have the money to pay them.

139.    Initially, Mr. Dollinger claimed, "[w]e are in the middle of securing a deal which would return all of your clients funds" and that "[w]e are also happy to make payments in September."

140.    Although Mr. Dollinger claimed that PlantX no longer held, and Veg "never received" Plaintiffs' money, he refused to say where Defendants had sent Plaintiffs' investments.

141.    A month later, Mr. Dollinger claimed that Defendants' new funding round—with which they supposedly would pay Plaintiffs—had been "extended by a couple of weeks," but Defendants would pay Plaintiffs "[a]s soon as we get the shares and start selling 100%."

142.    Mr. Dollinger emphasized, "[e]verything is on track and will keep you updated. Feel free to reach out or always happy to jump on a call."

143.    Neither Mr. Dollinger nor anyone else "updated" Plaintiffs.

144.    In his last response to Plaintiffs' inquiries, Mr. Dollinger wrote:

This has nothing to do with me. I am founder of the company but have had 0 to do with the board or management of the company.

PlantX in Canada is the one who your clients bought the shares from. Please make sure you understand the parties involved.



145.    One week later, an individual purporting to be PlantX's lawyer reached out to undersigned counsel, asking for "the relevant agreements as well as" Plaintiffs' initial demand letter.

146.    That man's email domain, @blackthornlaw.ca, links to a website that purports to be under construction.

147.    Plaintiffs' counsel has found no evidence of a Canadian law firm named Blackthorn.

148.    Moreover, that individual failed to mention that he also was a director of Defendant LQR.

149.    And when Plaintiffs' counsel responded with the requested documents and offered to "hold off on suit" if Defendants engaged in a good-faith settlement—noting that LQR appeared to have conspired with PlantX, Veg, and Mr. Dollinger—that individual went silent.

**The PlantX Enterprise**

150.    Defendants are a group of persons and entities associated together in fact as the "**PlantX Enterprise**" for the common purpose of carrying out an ongoing criminal enterprise.

151.    Throughout their years of working together, Defendants have stolen money from innocent investors like Plaintiffs.

152.    Instead of using Plaintiffs' investments to fund legitimate business operations, Defendants simply create new shell companies and transfer investors' money among those companies and, eventually, for the individual Defendants' own personal benefit.

153.    At all times relevant to this complaint, the Individual Defendants engaged in the operation or management of the PlantX Enterprise.

154.    No later than 2018, Messrs. Dollinger and Khan began perpetrating the PlantX Enterprise activity by defrauding Namaste investors in the same manner that they later defrauded Plaintiffs.

155.    All Defendants used the telephone and the internet to defraud their victims, including Plaintiffs.

156.    Defendants engaged in interstate commerce to move victims' money from entity to entity, account to account, including by transferring money and assets among entities formed and incorporated across multiple states and countries.

157.    Even after the Repurchase Date elapsed, Defendants doubled down on their lies to Plaintiffs, lying about where Plaintiffs' money had gone and about how Defendants would repay Plaintiffs.

158.    Among other lies, Defendants claimed that they would begin escrowing money for Plaintiffs in September, as soon as an unnamed supposed transaction occurred.

159.    As September wore on, Defendants still did not deny that PlantX owed Plaintiffs money, but instead claimed that the supposed deal was just delayed.

160.    Moreover, Defendants began dodging their promises to escrow Plaintiffs' money.

161.    And, of course, Defendants' responses to Plaintiffs' initial demand admitted that PlantX already had breached at least two SPA provisions: PlantX's duties to (1) repurchase Plaintiffs' securities by May 2024 and (2) hold on to Plaintiffs' money until Veg IPOed or PlantX returned Plaintiffs' cash.

162.    The predicate acts described in this complaint comprise wire fraud, securities fraud, money laundering, and violations of the National Stolen Property Act ("**NSPA**").

163.    The specific details of the transactions that Defendants used to steal Plaintiffs' money are within Defendants' knowledge and control, which Plaintiffs will identify in discovery and prove at trial.

# CAUSES OF ACTION

## COUNT I – RICO 18 U.S.C. § 1962(c)
## Against Messrs. Dollinger, Rapkin, Khan, and Abhishek and Ms. Hoffman

164.    Plaintiffs incorporate their foregoing allegations.

165.    At all relevant times, Plaintiffs and Defendants Dollinger, Rapkin, Khan, Hoffman, and Abhishek have been "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

166.    At all relevant times, the PlantX enterprise has (a) been an ongoing association-in-fact with a decision-making framework or mechanism for controlling the association and (b) had associated members with a common purpose that function as a continuing unit, including all Defendants.

167.    Defendants Dollinger, Rapkin, Khan, Hoffman, and Abhishek are natural persons who have personally conducted and participated in the PlantX Enterprise's affairs through a pattern of racketeering activity.

168.    18 U.S.C. § 1964(c) authorizes Plaintiffs to sue Defendants Dollinger, Rapkin, Khan, Hoffman, and Abhishek for violating 18 U.S.C. § 1962(c) and to recover treble damages, costs and fees, and interest.

## COUNT II – RICO 18 U.S.C. § 1962(d)
## Against All Defendants

169.    Plaintiffs incorporate their foregoing allegations.

170.    Defendants entered into a series of agreements between and among each other to knowingly and willfully conspire to violate 18 U.S.C. § 1962(c).

171.    Each Defendant entered into at least one agreement with at least one other Defendant to join the conspiracy, took acts in furtherance of that conspiracy, and knowingly participated in that conspiracy.

172.    Each Defendant agreed and conspire to conduct the affairs of the PlantX Enterprise through a pattern of racketeering activity, including through committing predicate acts in violation of federal wire fraud, money laundering, and NSPA statutes.

173.    As co-conspirators and members of the PlantX Enterprise, each Defendant is liable for all acts committed by all Defendants within the conspiracy's scope and all damages sustained by Plaintiffs caused by any conspiracy member, regardless of whether that individual Defendant, him- / her- / itself, directly participated in a particular aspect of the PlantX Enterprise.

174.    18 U.S.C. § 1964(c) allows Plaintiffs to sue Defendants for violating 18 U.S.C. § 1962(d) and recover treble damages, costs and fees, and interest.

## COUNT III – SECURITIES FRAUD
### Against PlantX, Veg, Messrs. Dollinger and Rapkin and Ms. Hoffman

175.    Plaintiffs incorporate their foregoing allegations.

176.    PlantX, Veg, Messrs. Dollinger and Rapkin, and Ms. Hoffman carried out a plan, scheme, and course of conduct which was intended to, and did (a) deceive the investing public, including Plaintiffs, and (b) cause Plaintiffs to purchase Veg shares at artificially-inflated prices.

177.    PlantX, Veg, Messrs. Dollinger and Rapkin, and Ms. Hoffman (a) employed devices, schemes, and artifices to defraud, (b) made untrue statements of material fact and omitted to state material facts necessary to make the statements not misleading, and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiffs in an effort to line Defendants' own pockets in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

178.    PlantX, Veg, Messrs. Dollinger and Rapkin, and Ms. Hoffman, individually and jointly, directly and indirectly, engaged in a continuous course of conduct to conceal adverse material information about Veg and PlantX's financial well-being, operations, and prospects.

179.    Among other misrepresentations, these Defendants failed to disclose their conflicts of interest, lack of liquidity, poor financial performance, and misappropriation of investors' money to line their own pockets, including paying compensation and issuing shares to relatives and buying luxury homes in one of the most expensive neighborhoods in America.

180.    PlantX, Veg, Messrs. Dollinger and Rapkin, and Ms. Hoffman made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

181.    PlantX, Veg, Messrs. Dollinger and Rapkin, and Ms. Hoffman had actual knowledge of the misrepresentations and omissions of material fact alleged in this Complaint, or recklessly disregarded the true facts that were available to them.

182.    PlantX, Veg, Messrs. Dollinger and Rapkin, and Ms. Hoffman engaged in this misconduct to conceal PlantX and Veg's true condition from Plaintiffs and to deceive Plaintiffs into buying Veg's securities from PlantX.

183.    In doing so, PlantX, Veg, Messrs. Dollinger and Rapkin, and Ms. Hoffman violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT IV – CONTROL PERSON LIABILITY
### Against Messrs. Dollinger, Rapkin, and Khan and Mses. Hoffman and Frank

184.    Plaintiffs incorporate their foregoing allegations.

185.    Messrs. Dollinger, Rapkin, and Khan and Mses. Hoffman and Frank acted as controlling persons of Veg and PlantX within the meaning of Section 20(a) of the Exchange Act.

186.    By virtue of their high-level positions, participation in and / or awareness of Veg and PlantX's operations, direct involvement in the day-to-day operations of Veg and PlantX, and / or intimate knowledge of Veg and PlantX's actual performance, and

their power to control Veg and PlantX's statements to potential investors and to Plaintiffs, these Defendants had the power and ability to control the actions of Veg and PlantX.

187.    By reason of such conduct, Messrs. Dollinger, Rapkin, and Khan and Mses. Hoffman and Frank are liable under Section 20(a) of the Exchange Act.

## COUNT V – BREACH OF CONTRACT
### Against All Defendants Except Messrs. Abhishek and Khan and Ms. Frank

188.    Plaintiffs incorporate their foregoing allegations.

189.    The SPAs required PlantX to retain Plaintiffs' cash until Veg IPOed, repurchase Plaintiffs' securities if Veg did not IPO by May 2024, and Veg House to register Plaintiffs' securities.

190.    PlantX never repurchased Plaintiffs' securities and Veg House never registered these securities.

191.    In September and October 2024, PlantX, through Mr. Dollinger, repeatedly told Plaintiffs that PlantX no longer has their cash.

192.    All Entity Defendants are liable for PlantX and Veg's breaches of the SPAs because each Entity Defendant is an alter ego of PlantX and Veg.

193.    Messrs. Dollinger, Rapkin, and Hoffman also are liable for breach-of-contract because they completely dominated PlantX and Veg and abused their corporate forms to defraud Plaintiffs into buying Veg's securities from PlantX.

194.    These Defendants' breaches of the SPAs entitle Plaintiffs to no less than $650,000 in damages before interest, costs, and fees.

## COUNT VI – CONVERSION
## Against All Defendants

195.    Plaintiffs incorporate their foregoing allegations.

196.    The SPAs required PlantX to retain Plaintiffs' cash until Veg IPOed, repurchase Plaintiffs' securities if Veg did not IPO by May 2024, and Veg House to register Plaintiffs' securities.

197.    Plaintiffs' $650,000 comprise specifically-identifiable funds that are the proper basis of a conversion claim.

198.    Defendants must return Plaintiffs' property.

### REQUEST FOR RELIEF

Plaintiffs request the following relief:

(i)     Damages and / or restitution in an amount to be determined at trial, totaling no less than $1,950,000 before interest, costs, and fees;
(ii)    Rescission of the SPAs and restitution of Plaintiffs' purchase amounts;
(iii)   Preliminary and permanent equitable relief, including injunctions and / or attachment;
(iv)    Punitive and statutory damages;
(v)     All interest, costs, and attorneys' fees, incidental and consequential relief, and all other relief that the Court finds just and proper.

## JURY DEMAND

Plaintiffs demand a jury trial.


Dated: October 21, 2024
      New York, New York

                       Respectfully submitted,

                       GUSRAE KAPLAN NUSBAUM PLLC

                       /s/ Kari Parks
                       Kari Parks
                       120 Wall Street, 25th Floor
                       New York, New York 10005
                       kparks@gusraekaplan.com

                       *Counsel for Plaintiffs Ivan Caplan, John Darger, Matthew George, Ralph G. Potente, Robert G. Riviere, Mary W. Riviere, Melissa Roth, Thomas Schwan, and Peter Turkl*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IVAN CAPLAN, JOHN DARGER, MATTHEW GEORGE, RALPH G. POTENTE, ROBERT G. RIVIERE, MARY W. RIVIERE, MELISSA ROTH, THOMAS SCHWAN, and PETER TURKL, | **No. 1:24-cv-07996** |
| Plaintiffs, | **VERIFICATION OF KARI PARKS** |
| -against- | |
| SEAN DOLLINGER, LORNE RAPKIN, ALEXANDRA "ALEX" HOFFMAN, KUMAR ABHISHEK, SHARIQ KHAN, JULIA J. FRANK, PLANTX LIFE INC., VEG HOUSE HOLDINGS INC., DOLLINGER HOLDINGS LLC, LQR HOUSE INC., CAY INNOVATIONS LTD., PLANTX MIDWEST INC., VEG HOUSE ILLINOIS INC., PLANTX LIVING INC., VEGASTE TECHNOLOGIES US CORP., LITTLE WEST LLC, PLANT-BASED DELI LLC, WS WEST LLC, VEG HOUSE HOLDINGS GP INC., and NEW DELI HILLCREST LLC, | |
| Defendants. | |

Pursuant to 28 U.S.C. § 1746, I, Kari Parks, declare as follows:

1.      I am Plaintiffs' counsel in the above-captioned action, a partner of the law firm Gusrae Kaplan Nusbaum PLLC, and am admitted to practice before this Court.

2.      To draft this complaint, I engaged with Defendant Sean Dollinger and an individual purporting to represent Defendant PlantX Life Inc.; had conversations with Plaintiffs and others involved in the transactions at issue; and gathered and reviewed

dozens of documents I believe to be reliable, including Plaintiffs' respective contracts and communications with Defendants, Defendants PlantX Life Inc. and Veg House Holdings Inc.'s respective securities filings, various states' corporation records, real estate records, previous litigations' filings, Defendants' websites, advertisements, and social media records, and newspaper articles and obituaries.

3.      I have reviewed the allegations made in the complaint and to those allegations of which I have personal knowledge through my research and analysis summarized above, I believe them to be true and correct.

4.      To the extent some of the complaint's allegations are made "upon information and belief," I believe those allegations to have reasonable good-faith bases, including by inference through the documents reviewed and represented in the complaint's other allegations and summarized above.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.


Dated: October 21, 2024
        New York, New York

                                        /s/ Kari Parks
                                        Kari Parks