**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IVAN CAPLAN, *et al.*,

                *Plaintiffs*,

v.

SEAN DOLLINGER, *et al.*,

                *Defendants*.

---

**Case No. 1:24-cv-07996**

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

PLAINTIFFS' ALLEGATIONS ........................................................................................ 3

LEGAL ARGUMENT ...................................................................................................... 4

   A.     Defendants Did Not Willfully Default. .......................................................... 5

   B.     Defendants Have Meritorious Defenses to the Amended Complaint. ............................ 6

       I.    The Court Only Has Personal Jurisdiction Over PlantX. ......................................... 6

       II.   Plaintiffs' RICO Claims Are Precluded By Law and Inadequately Pled. .............. 12

       III.  Plaintiff Has Not Adequately Pled Its Securities Fraud or Control Person Liability Claims. ................................................................................................................ 15

       IV.  Plaintiffs' Breach of Contract Claim Is Improperly Asserted Against Non-PlantX Defendants. ............................................................................................................ 16

       V.   Plaintiffs' Conversion Claim Fails Because It Is Premised on Plaintiffs' Breach of Contract Allegations. ................................................................................................ 17

   C.     Plaintiffs Would Not Be Prejudiced. ................................................................ 18

CONCLUSION .............................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Allen v. Norman,*
   2012 U.S. Dist. LEXIS 115292 (S.D.N.Y. July 23, 2012) .......................................6

*American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.,*
   92 F.3d 57 (2d Cir. 1996)...............................................................................5, 6

*Arcadia Biosciences, Inc. v. Vilmorin & Cie,*
   356 F. Supp. 3d 379 (S.D.N.Y. 2019).....................................................................8

*Assets Recovery 23, LLC v. Gasper,*
   2018 U.S. Dist. LEXIS 192374 (E.D.N.Y. Nov. 9, 2018)....................................7, 8

*ATSI Communs., Inc. v. Shaar Fund, Ltd.,*
   493 F.3d 87 .......................................................................................................16

*Bailey v. Rec. Equip, Inc.,*
   2023 U.S. Dist. LEXIS 169793 ..........................................................................12

*Benedict v. Amaducci,*
   1995 U.S. Dist. LEXIS 9681 (S.D.N.Y. July 12, 1995) ......................................14

*Capital Mgmt. Select Fund Ltd. v. Bennett,*
   680 F.3d 214 (2d Cir. 2012).................................................................................15

*Cesfin Ventures LLC v. Al Ghaith Holding Co. PJSC,*
   2022 U.S. Dist. LEXIS 223858 (S.D.N.Y. Dec. 10, 2022) ................................11

*Champions League, Inc. v. Woodard,*
   224 F. Supp. 3d 317 (S.D.N.Y. 2016)..................................................................15

*City of New York v. Mickalis Pawn Shop, LLC,*
   645 F.3d 114 (2d Cir. 2011)..................................................................................4

*Commercial Bank of Kuwait v. Rafidain Bank,*
   15 F.3d 238 (2d Cir. 1994)....................................................................................4

*CSI Inv. Partners II, L.P. v. Cendant Corp.,*
   180 F. Supp. 2d 444 (S.D.N.Y. 2001)..................................................................15

*D. Penguin Bros. v. City Nat. Bank,*
   587 F. App'x 663 (2d Cir. 2014) .........................................................................14

*Davis v. Musler,*
   713 F.2d 907 (2d Cir. 1983)................................................................................18

*Elohim EPF USA, Inc. v. 162 D & Y Corp.*,
   2021 U.S. Dist. LEXIS 105482 (S.D.N.Y. June 4, 2021)....................................6, 18

*Enron Oil Corp. v. Diakuhara*,
   10 F.3d 90 (2d Cir. 1993)....................................................................................4, 18

*Goldman v. Metropolitan Life Ins. Co.*,
   5 N.Y.3d 561 (N.Y. 2005) ........................................................................................18

*Gottdiener v. Sater*,
   35 F. Supp. 3d 386 (S.D.N.Y. 2014).......................................................................13

*Haoyang Huang v. Valarhash LLC*,
   2023 U.S. Dist. LEXIS 167491 (S.D.N.Y. Sep. 20, 2023)..............................9, 11

*Hartford Fire Ins. Co. v. Evergreen Org., Inc.*,
   410 F. Supp. 2d 180 (S.D.N.Y. 2006).......................................................................6

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
   2021 U.S. Dist. LEXIS 45110 (S.D.N.Y. Mar. 10, 2021) ........................................8

*Jeffers v. Am. Univ. of Antigua*,
   125 A.D.3d 440 (1st Dep't 2015) ...........................................................................17

*Johnston v. Norton*,
   1993 U.S. Dist. LEXIS 16000 (S.D.N.Y. Nov. 10, 1993).......................................15

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   104 F. Supp. 3d 384 (S.D.N.Y. 2015)...............................................................13, 14

*Karmilowicz v. Hartford Financial Services Group*,
   494 Fed. App'x 153 (2d Cir. 2012)..........................................................................17

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000)....................................................................................18

*Landoil Res. Corp. v. Alexander & Alexander Servs.*,
   77 N.Y.2d 28 (N.Y. 1990) .........................................................................................9

*Lewis v. Legal Servicing, LLC*,
   2021 U.S. Dist. LEXIS 148985 (S.D.N.Y. Aug. 9, 2021) .........................................4

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   673 F.3d 50 (2d Cir. 2012)......................................................................................11

*Martocci v. Oceanus Mutual Underwriting Assn. Ltd.*,
   1985 U.S. Dist. LEXIS 21088 (S.D.N.Y. April 3, 1985) .......................................6, 7

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
    651 F.3d 268 (2d Cir. 2011)..................................................................................13

*Oasis Cap., LLC v. Connexa Sports Techs. Inc.*,
    2023 U.S. Dist. LEXIS 216062 (S.D.N.Y. Dec. 5, 2023) ......................................8

*Raheim v. New York City Health and Hosps. Corp.*,
    2007 U.S. Dist. LEXIS 59573 (E.D.N.Y. Aug. 14, 2007)......................................5

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985)..............................................................................................14

*Smart Med. Solutions LLC v. MeddCare Corp.*,
    2023 U.S. Dist. LEXIS 138363 (E.D.N.Y. Aug. 8, 2023).......................................5

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
    750 F.3d 221 (2d Cir. 2014)....................................................................................9

*United States Fire Ins. Co. v. United Limousine Serv., Inc.*,
    303 F. Supp. 2d 432 (S.D.N.Y. 2004)...................................................................14

*Walden v. Fiore*,
    571 U.S. 277 (2014)..............................................................................................11

*Weimer v. Lake*,
    268 A.D.2d 741 (3rd Dep't 2000).............................................................................7

*Williams v. Affinion Group, LLC*,
    889 F.3d 116 (2d Cir. 2018)..................................................................................14

*Wolf v. Nat'l Council of Young Israel*,
    264 A.D.2d 416 (2d Dep't 1999)...........................................................................17

**Statutes**

18 U.S.C. § 1961(5) ...................................................................................................15

18 U.S.C. § 1962(c), (d)...............................................................................................3

18 U.S.C. § 1964(c) ...................................................................................................13

**Other Authorities**

N.Y. C.P.L.R. § 301..................................................................................................7, 9

N.Y. C.P.L.R. § 302............................................................................................7, 9, 10

N.Y. C.P.L.R. § 308(2)................................................................................................7

N.Y. C.P.L.R. § 311(1) ...........................................................................................7

N.Y. C.P.L.R. § 313 ............................................................................................7, 8

Fed. R. Civ. P. 55(a), (c) ........................................................................................4

Fed. R. Civ. P. 12(a)(1)(A)(i) .................................................................................6

COME NOW Defendants, Sean Dollinger, Lorne Rapkin, Alexandra Hoffman, Kumar Abhishek, Shariq Khan, Julia J. Frank, PlantX Life, Inc., Veg House Holdings, Inc., Dollinger Holdings, LLC, LQR House, Inc., South Doll Limited Partnership, 1347608 B.C. Limited Corp., Cay Innovations Ltd., PlantX Midwest, Inc., Veg House Illinois, Inc., PlantX Living, Inc., Vegaste Technologies US Corp., Little West, LLC, Plant-Based Deli, LLC, WS West, LLC, Veg House Holdings GP Inc., and New Deli Hillcrest, LLC (collectively, "Defendants"), by and through their undersigned counsel, and submit the following opposition to Plaintiffs Ivan Caplan, John Darger, Matthew George, Ralph G. Potente, Robert G. Riviere, Mary W. Riviere, Melissa Roth, and Peter Turkl's (collectively, "Plaintiffs") Motion for Default Judgment (the "Motion," ECF No. 52).

## INTRODUCTION

At its core, this Action is a contract dispute relating to the sale of securities. By and through the investment bank formerly known as EF Hutton, acting as the exclusive placement agent for Defendant PlantX Life, Inc. ("PlantX"), Plaintiffs entered into Share Purchase Agreements ("SPAs") with PlantX to purchase shares of PlantX's subsidiary, Veg House Holdings, Inc. ("Veg House").[1] Plaintiffs claim that PlantX and Veg House refused to honor repurchase obligations in the subject SPAs. *See* (Amended Complaint (ECF No. 6) at ¶¶ 7 – 12).

However, rather than being content with pursuing claims for breach of contract, Plaintiffs and their counsel have instead elected to improperly expand the scope of this Action to allege civil RICO and securities fraud against not only their contractual counterparties, but Sean Dollinger ("Mr. Dollinger")—who is neither an officer nor a director of PlantX—and various other individuals and entities. Plaintiffs' allegations are broad, vague, and conclusory; they speculate as

---

[1] ECF No. 10-1 is a true and accurate copy of the January 19, 2024 SPA between PlantX and Plaintiff Ivan Caplan. Upon information and belief, the other SPAs follow form.

to the Defendants' relationships with each other and do not satisfy the heightened pleading requirements for RICO or fraud (or even the basic pleading requirements applicable to certain of Plaintiffs' other causes of action).

More fundamentally, Plaintiffs' RICO claims (Counts I and II) arise from the same alleged conduct that gives rise to Plaintiffs' claim for securities fraud. *See generally* (ECF No. 6). The Private Securities Litigation Reform Act of 1995 (the "<u>PSLRA</u>") and the RICO statute expressly preclude private individuals from bringing civil RICO actions premised on alleged securities fraud, meaning Defendants have a meritorious legal defense to those claims.

Defendants did not intentionally delay in appearing and responding in this Action, and Plaintiffs have not been prejudiced by the approximately seven-week delay (most Defendants' deadline to respond to the operative pleading was December 3, 2024). *See* (ECF Nos. 18 – 40). Plaintiffs have sued *twenty-two* individuals and entities. Defendants were intimidated and surprised by the salacious accusations made against them, and they ultimately concluded that the attorneys they previously worked with lacked the requisite experience to defend this Action. Defendants have been diligently searching for and interviewing experienced RICO attorneys licensed in New York.[2]

Defendants and their counsel stand ready to respond to the Amended Complaint. Defendants accordingly respectfully request that the Court: (i) deny the Motion; (ii) enter an order vacating the Clerk's entry of default[3]; and (iii) grant Defendants twenty-one (21) days to respond

---

[2] The undersigned attorneys of record were formally engaged by all Defendants over the course of the week of January 21, 2025. (Declaration of Sean Dollinger at ¶ 3).
[3] Defendants are contemporaneously filing a short motion to vacate the Certificates of Default.

to the Amended Complaint and twenty-eight (28) days to oppose Plaintiffs' motion for injunctive relief and attachment.  *See* (ECF Nos. 8 – 10).[4]

## PLAINTIFFS' ALLEGATIONS

This Action concerns eight SPAs, dated on or about January 11, 2024, each of which is between PlantX and an individual Plaintiff.  *See, e.g.*, (ECF No. 10-1).  The SPAs were brokered and handled by what was then EF Hutton as the exclusive placement agent for PlantX.  (*Id*. at 1). Pursuant to the SPAs, each Plaintiff purchased shares of Veg House.  (*Id*. at 3 (Section 2.1)).  The SPAs provide that, "[i]n the event that Veg [House] shall not have completed an initial public offering of its Shares registered under the Securities Act at an offering price of not less than US$5.00 per Share on or before the Repurchase Date, then the Seller [PlantX] shall repurchase the Purchased Shares from the Purchaser for the Purchase Amount."  (Ex. 1 at 5 (Section 2.4)).

Plaintiffs allege that Veg House failed to go public, and PlantX failed to repurchase the subject shares.  *See* (ECF No. 6 at ¶ 8).  Plaintiffs claim they are collectively entitled to a total of $350,000 for the repurchase of 350,000 shares of Veg House.  (*Id*. at 32 (the "Request for Relief")).

Plaintiffs are not content to assert claims against PlantX and/or Veg House[5] for breach of contract and/or securities fraud.  Instead, Plaintiffs have sued PlantX, Veg House, and twenty other entities and individuals.  Plaintiffs assert the following claims: (i) RICO, 18 U.S.C. § 1962(c) (against Messrs. Dollinger, Rapkin, Khan, and Abhishek, along with Ms. Hoffman); (ii) RICO, 18 U.S.C. § 1962(d) (against all Defendants); (iii) securities fraud (against PlantX, Veg House, Messrs. Dollinger and Rapkin, and Ms. Hoffman); (iv) control person liability (against Messrs.

---

[4] Defendants file a motion to vacate contemporaneously with this Memorandum.
[5] Veg House is a signatory to the SPAs only with respect to Article VI thereof, "Registration Rights Granted by Veg," wherein Veg House agrees that the subject shares will be registered "pursuant to the next Registration Statement…made effective by the Commission under the Securities Act." *See* (ECF No. 10-1 at 12 –13).

Dollinger, Rapkin, and Khan, along with Mses. Hoffman and Frank); (v) breach of contract (against all Defendants, other than Messrs. Abhishek and Khan and Ms. Frank); (vi) conversion (against all Defendants); and (vii) unjust enrichment (against all Defendants).  *See* (ECF No. 6 at ¶¶ 192 – 230).

## <u>LEGAL ARGUMENT</u>

Pursuant to Rule 55 of the Federal Rules of Civil Procedure ("<u>F.R.C.P.</u>"), default may be entered against a defendant who "fail[s] to plead or otherwise defend" an action against it.  Fed. R. Civ. P. 55(a).  A default judgment "is the most severe sanction which the court may apply" and is "generally disfavored."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (internal citations and quotations omitted).

Pursuant to F.R.C.P. 55(c), a defendant can successfully oppose a default judgment motion upon a showing of good cause, and "dispositions of motions for entries of defaults and default judgments and relief from the same…are left to the sound discretion of a district court."  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).  In the Second Circuit, this discretion is "circumscribed," and "there is a strong preference for resolving disputes on the merits."  *Enron*, 10 F.3d at 95.

Good cause may be determined by considering three factors: (i) whether Defendants' default was willful; (ii) whether Defendants have meritorious defenses; and (iii) whether setting aside the default would prejudice Plaintiffs.  *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2d Cir. 1994); *see also Lewis v. Legal Servicing, LLC*, 2021 U.S. Dist. LEXIS 148985, at *8 – 9 (S.D.N.Y. Aug. 9, 2021) (internal citations and quotations omitted) (setting forth the three-part "good cause" standard and noting that, while "[d]efault procedures provide a useful remedy when a litigant is confronted by an obstructionist adversary," the Court should be guided

4

by its "duty to do justice in the particular case and afford litigants a reasonable chance to be heard").

The twenty-two Defendants: (i) did not willfully default; and (ii) have meritorious defenses to the allegations set forth in the Amended Complaint.[6]  Plaintiffs would not be prejudiced if their Motion was denied and the clerk's entry of default was set aside.

### A.    <u>Defendants Did Not Willfully Default.</u>

A finding of willfulness is appropriate where there is "evidence of bad faith," or the default arose from "egregious or deliberate conduct." *American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 60 – 61 (2d Cir. 1996). Courts should, "resolve any doubt about [a defendant's] willfulness in [its] favor." *Raheim v. New York City Health and Hosps. Corp.*, 2007 U.S. Dist. LEXIS 59573, at *4 (E.D.N.Y. Aug. 14, 2007) (*citing Enron*, 10 F.3d at 98).

There is no bad faith on the part of Defendants, who diligently searched for New York counsel with relevant RICO experience once this Action was commenced.[7]  *See* (Dollinger Decl. at ¶ 4).  Notably, Plaintiffs' counsel admits, in a declaration in support of the Motion, that she had been contacted by attorneys for Defendants both before and after she filed the Amended Complaint.  (ECF No. 53 at ¶¶ 5 – 10).

Courts have refused to find willfulness despite much longer delays.  *See, e.g.*, *Smart Med. Solutions LLC v. MeddCare Corp.*, 2023 U.S. Dist. LEXIS 138363, at * 13 – 14 (E.D.N.Y. Aug. 8, 2023) (finding that a defendant's first appearance four months after the complaint was filed and

---

[6] As the undersigned counsel were engaged only about a week ago, Defendants expressly reserve their rights to assert additional meritorious defenses in their response(s) to the Amended Complaint as more information becomes available.

[7] Defendants are located across multiple states and countries, which made it difficult to coordinate regarding potential defense counsel, particularly during the holidays.  (Dollinger Decl. at ¶ 5).

defense counsel's first appearances within seven weeks of service of the default judgment papers meant "the overall timeline of the case weighs in Defendants' favor in an evaluation of willfulness"); *Elohim EPF USA, Inc. v. 162 D & Y Corp.*, 2021 U.S. Dist. LEXIS 105482, at *7 – 8 (S.D.N.Y. June 4, 2021) (finding that, even though the defendants failed to appear for almost a year despite being aware of the litigation from the outset, they had not acted willfully because they had actively sought to engage counsel).

### B.    <u>Defendants Have Meritorious Defenses to the Amended Complaint.</u>

"[W]hether a meritorious defense is presented[] requires only that the defendant meet a low threshold," and "[t]he test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence…would constitute a complete defense." *Allen v. Norman*, 2012 U.S. Dist. LEXIS 115292, at *17 – 18 (S.D.N.Y. July 23, 2012) (internal citations and quotations omitted); *see also American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (internal citations and quotations omitted) (a defense to a claim "need not be ultimately persuasive at this stage…A defense is meritorious if it is good at law so as to give the factfinder some determination to make.").

Defendants have several meritorious defenses, including, *e.g.*: (i) deficient service of process and, relatedly, lack of personal jurisdiction, stemming from the Amended Complaint's failure to sufficiently allege facts supporting the "alter ego" theory Plaintiffs rely upon; (ii) pleading deficiencies with respect to all of Plaintiffs' causes of action; and (iii) the aforementioned securities fraud exception to civil RICO.

### I.    The Court Only Has Personal Jurisdiction Over PlantX.

A party generally must respond to a complaint and summons within twenty-one days of service thereof. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). However, it is well-established that a party that is not subject to the Court's personal jurisdiction has no obligation to respond. *Hartford Fire*

*Ins. Co. v. Evergreen Org., Inc.*, 410 F. Supp. 2d 180, 183 – 84 (S.D.N.Y. 2006) (*citing Martocci v. Oceanus Mutual Underwriting Assn. Ltd.*, 1985 U.S. Dist. LEXIS 21088, at *3 – 4 (S.D.N.Y. April 3, 1985)).

In New York, service on out-of-state defendants is governed by N.Y. C.P.L.R. Sections 301, 302, and 313.  Collectively, these statutes provide that an out-of-state individual or entity may be served "in the same manner as service is made within" New York *only if* there is a basis for general or specific personal jurisdiction over the individual or entity.  C.P.L.R. § 313 (*citing* §§ 301 and 302); *see also Assets Recovery 23, LLC v. Gasper*, 2018 U.S. Dist. LEXIS 192374, *16 – 17 (E.D.N.Y. Nov. 9, 2018) and *Weimer v. Lake*, 268 A.D.2d 741, 742 (3rd Dep't 2000) (holding that "allegedly tortious conduct committed by defendant in New York…provides a basis for acquiring long-arm jurisdiction over [the] defendant in Arizona, and service could have been effected upon him there through any of the modes permitted in this State") (internal citations omitted).

Assuming the Amended Complaint adequately alleges a basis for personal jurisdiction over the out-of-state Defendants, New York's service of process requirements for in-state defendants are applicable.  In particular, C.P.L.R. Section 308 provides that a defendant may be served via "a person of suitable age and discretion" at the defendant's place of business, and Section 311 provides that a corporation may be served via its registered agent or an officer or director of the company.  C.P.L.R. §§ 308(2), 311(1).

The SPAs at issue in this Action are between each of the Plaintiffs and PlantX (and, as to Article VI only, between each Plaintiff, PlantX, and Veg House).  The SPAs include a "Governing Law" provision wherein PlantX consents to "the exclusive jurisdiction" of the state and federal courts in New York City "for the adjudication of any dispute" arising under the SPA against either party to the SPA "or its respective Affiliates, directors, officers, shareholders, employees[,] or

agents." *See, e.g.*, (ECF 10-1at 10 (Section 5.6)). Because Veg House only signed the SPAs as to Article VI, it did not consent to the Court's jurisdiction. (*Id.* at 13.)

While non-signatories to a contract—*e.g.*, an officer who signed in his official capacity— may be bound by the contract's forum selection clause, this inquiry hinges on questions of fact regarding the relationship between the signatory and the party to the contract, including whether "successor liability and alter ego" theories apply and "whether the individual has displayed an intent to be bound by the contract beyond signing the contract in their official capacity." *Oasis Cap., LLC v. Connexa Sports Techs. Inc.*, 2023 U.S. Dist. LEXIS 216062, at *10 – 11 (S.D.N.Y. Dec. 5, 2023) (*citing HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 U.S. Dist. LEXIS 45110, at *8 (S.D.N.Y. Mar. 10, 2021) and *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 374 (S.D.N.Y. 2019)). As explained *infra*, Plaintiffs make entirely speculative and conclusory statements in attempting to allege an alter ego theory of liability encompassing Defendants, so the non-PlantX Defendants are not bound by the SPAs, for purposes of personal jurisdiction or for ultimate liability for Plaintiffs' alleged contractual damages.

Because this Court indisputably has personal jurisdiction over only PlantX pursuant to the subject SPAs, under C.P.L.R. Section 313, PlantX may properly be served in accordance with CPLR Section 311. The Affidavit of Service for PlantX states that the company was served via Alexandra Hoffman, a PlantX director. *See* (ECF No. 29). Such service would appear to comport with Section 311. However, as explained *infra*, PlantX has other meritorious defenses to Plaintiffs' causes of action.

a.    *The Court Does Not Have Personal Jurisdiction Over the Non-PlantX Defendants.*

Plaintiffs claim, in their Motion, that they are entitled "to serve out-of-state defendants in the same manner as in-state defendants" (ECF No. 52 at 16), but this is only true if Plaintiffs have

alleged a basis for the Court's personal jurisdiction over Defendants for all of their causes of action. "A federal court in New York may exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction, under C.P.L.R. § 301, or specific jurisdiction, under C.P.L.R. § 302." *Haoyang Huang v. Valarhash LLC*, 2023 U.S. Dist. LEXIS 167491, at *2 (S.D.N.Y. Sep. 20, 2023) (internal citations and quotations omitted).

While the Amended Complaint fails to clearly allege a basis for personal jurisdiction over the non-PlantX Defendants—and, in particular, the individual Defendants—the minimal allegations that are set forth are insufficient to establish the Court's personal jurisdiction over the non-PlantX Defendants for any of the claims asserted.

"In New York, pursuant to CPLR § 301, general jurisdiction exists when a company 'has engaged in [] a continuous and systematic course of 'doing business'" in the state. *Huang*, 2023 U.S. Dist. LEXIS 167491, at *2 (*quoting Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) and *Landoil Res. Corp. v. Alexander & Alexander Servs.*, 77 N.Y.2d 28, 22 (N.Y. 1990)). The statute "also allows courts in New York to exercise general personal jurisdiction over individuals who are domiciled in New York, have a physical presence in New York…consent to New York's exercise of jurisdiction, or…do business in New York." *Huang* at *3 (internal citations and quotations omitted).

The Amended Complaint contains the following allegations concerning the residency, citizenship, and/or operation of Defendants: (i) 1347608 B.C. Limited Corp.: Florida corporation headquartered in Canada (ECF No. 6 at ¶¶ 50 – 52); (ii) Ms. Hoffman: California or Florida resident and Canadian citizen (*id.* at ¶ 59); (iii) Mr. Rapkin: Canadian resident and citizen (*id.* at ¶ 61); (iv) Mr. Dollinger: Florida resident and Canadian citizen (*id.* at ¶ 67); (v) PlantX: Canadian company headquartered in Florida (*id.* at ¶ 69); (vi) Veg House: Cayman Islands company

headquartered in Florida (*id*. at ¶ 72); (vii) Dollinger Holdings, LLC: Florida company headquartered in Florida (*id*. at ¶ 84 – 85); (viii) LQR House, Inc.: Florida company headquartered in Florida (*id*. at ¶ 87); (ix) PlantX Midwest, Inc.: Illinois corporation headquartered in Illinois (*id*. at ¶ 92); (x) Veg House Illinois, Inc.: Illinois corporation headquartered in Illinois (*id.* ¶ at 93); (xi) PlantX Living, Inc.: Canadian company; (xii) Vegaste Technologies US Corp.: Florida company headquartered in Florida (*id*. at ¶ 99 – 100); (xiii) Little West, LLC, Plant-Based Deli, LLC, and WS West, LLC: California companies headquartered in California (*id*. at ¶ 103); and (xiv) New Deli Hillcrest, LLC: Florida company headquartered in California (*id*. at ¶ 108).

In short: (i) none of the individual Defendants are domiciled in New York; (ii) none of the entity Defendants are New York companies or have New York locations; (iii) the non-PlantX Defendants did not consent to personal jurisdiction in New York; and (iv) the Amended Complaint does not allege that any Defendant regularly does business in New York. *See generally* (ECF No. 6). There is no basis for this Court's exercise of general personal jurisdiction over any of the non-PlantX Defendants.

C.P.L.R. Section 302, New York's long-arm statute, provides the following bases for specific personal jurisdiction: (i) transacting business in New York or contracting to supply goods or services into the state; (ii) committing a tortious act in New York or causing injury within the state *if* the defendant regularly does business, "engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered" in New York, or "expects or should reasonably expect the act to have consequences" in New York and "derives substantial revenue from interstate or international commerce"; or (iii) owning, possessing, or using real property in New York. C.P.L.R. § 302. The Amended Complaint lacks any allegations that any of these bases exist. *See generally* (ECF No. 6.)

"[E]ven if a plaintiff can establish a statutory basis for [specific] jurisdiction under New York's long-arm statute, the plaintiff would still need to show that personal jurisdiction comports with constitutional due process principles." *Huang* at *5 (*citing Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012)). Plaintiffs "cannot be the only link between" Defendants and New York; "it is [Defendants'] conduct that must form the necessary connection" between them and the State. *Id*. (*citing Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

If personal jurisdiction is established over one defendant, its "alter ego" may also be subject to personal jurisdiction. The threshold for demonstrating that a certain defendant is an alter ego of another defendant for jurisdictional purposes is not high at the pleading stage, but a plaintiff is required to show that the alter ego "was subject to the complete domination of the other" defendant "so that the two are indistinguishable for practical purposes." *Cesfin Ventures LLC v. Al Ghaith Holding Co. PJSC*, 2022 U.S. Dist. LEXIS 223858, at *10 – 11 (S.D.N.Y. Dec. 10, 2022) (internal citations and quotations omitted). "No one factor is determinative…the key inquiry is whether the corporation is being used by the alleged dominating entity to advance its own personal interests as opposed to furthering the corporate ends." *Cesfin Ventures*, 2022 U.S. Dist. LEXIS 223858, at *11 (internal citations and quotations omitted).

Regarding the entity Defendants, the Amended Complaint is devoid of *any* specific factual allegations against most of them,[8] including any allegations concerning their involvement in the investments at issue; with the respect to the underlying transactions, the Amended Complaint is

---

[8] This is true of certain individual Defendants, too; for example, the only factual allegations referencing Ms. Frank identify her as the CEO of Veg House, a signatory of Veg House's SEC filings, and a citizen and resident of Germany. (ECF No. 6 at ¶¶ 73, 112 – 113). The only factual allegations referencing several of the entity Defendants simply state their address and identify their executives or registered agents. *See, e.g.*, (*id*. at ¶¶ 49 – 52, 69, 72, 45, 84 – 88, 92 – 105, 107 – 112).

focused entirely on PlantX's alleged breach of contract (*e.g.*, explaining the terms of the SPAs).[9] Instead, the Amended Complaint alleges, in general terms, that all Defendants are connected to each other and are "alter egos *of each other*." *See, e.g.*, (ECF No. 6 at ¶ 114) (emphasis added). To support this conclusion, Plaintiffs allege that certain Defendants are officers or directors of more than one entity Defendant, and that certain Defendants share an address. (ECF No. 6 at ¶¶ 69 – 100, 103 – 105, 107 – 112).

These conclusory allegations are an insufficient basis for personal jurisdiction over the non-PlantX entity Defendants. To sufficiently allege that alter ego liability subjects those Defendants to the Court's jurisdiction, Plaintiffs were required to plead facts establishing that there was a "dominator" and that the alter egos "primarily transacted the dominator's business rather than [their] own." *Bailey v. Rec. Equip, Inc.*, 2023 U.S. Dist. LEXIS 169793, at *10 (internal citations and quotations omitted). Plaintiffs have failed to do so.

## II. Plaintiffs' RICO Claims Are Precluded By Law and Inadequately Pled.

### a. *Plaintiffs' RICO Claims Are Precluded By the PSLRA.*

Plaintiffs allege that their subject purchases of Veg House shares were part of a scheme by all Defendants to engage in fraud in the sale of securities to misappropriate funds for personal use. *See* (ECF No. 6 at ¶¶ 193 – 202). Plaintiffs also allege that a single Defendant—Mr. Dollinger— was previously sued for alleged securities fraud. *See* (*id*. at ¶ 122). These allegations form the factual basis of Plaintiffs' securities fraud claim and its RICO claims.

Plaintiffs are barred from bringing RICO claims predicated on allegations of fraud in securities actions by § 1964(c) of the RICO statute (the provision creating private civil RICO

---

[9] Plaintiffs appear to claim that the so-called "PlantX Enterprise" began in 2018, but that accusation is premised on prior, separate fraud allegations relating to a non-party entity that Mr. Dollinger and Mr. Khan were allegedly previously associated with. (ECF No. 6 at ¶¶ 121 – 122, 182).

causes of action), as amended by the PSLRA.  Section 1964(c) states that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish" a RICO violation.  18 U.S.C. § 1964(c).  The PSLRA was enacted to "prevent litigants from using artful pleading to boot-strap securities fraud cases into RICO cases, with their threat of treble damages." *MLSMK Inv. Co. v. JP Morgan Chase & Co*., 651 F.3d 268, 274 (2d Cir. 2011) (internal citations and quotations omitted); *see also* S. Rep. No. 104-98, at 19 (1995) (quoting then-SEC Chairman Arthur Levitt's testimony that "[b]ecause the securities laws generally provide adequate remedies for those injured by securities fraud, it is both unnecessary and unfair to expose defendants in securities cases to the threat of treble damages and other extraordinary remedies provided by RICO.").  That is exactly what Plaintiffs seek to do in this Action.

While § 1964(c) includes an exception for "action[s] against any person that is *criminally convicted* in connection with the fraud" (emphasis added), the Amended Complaint doesn't allege that any Defendant, including Dollinger, was convicted of securities fraud, in connection with the transactions at issue or otherwise.  *See generally* (ECF No. 6).  "RICO's criminal conviction exception must be interpreted as narrowly as possible…the exception is only available to those plaintiffs against whom a defendant has specifically been convicted of criminal fraud." *Kaplan v. S.A.C. Capital Advisors, L.P.*, 104 F. Supp. 3d 384, 389 (S.D.N.Y. 2015).

Plaintiffs' civil RICO claims are meritless and should be dismissed, like numerous other RICO claims premised on securities fraud brought by plaintiffs in this Court and Circuit.  *See, e.g*., *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 270 (2d Cir. 2011); *Gottdiener v. Sater*, 35 F. Supp. 3d 386, 394 (S.D.N.Y. 2014); *Kaplan*, 104 F. Supp. 3d 384, 387 (S.D.N.Y. 2015).

     b.     *Plaintiffs' RICO Predicate Acts Are Inadequately Pled.*

A RICO plaintiff "must plead four elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 665 (2d Cir. 2014) (summary order) (*quoting Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). The fourth element, racketeering activity—also known as the "predicate act(s)" requirement—is typically wire or mail fraud (as previously noted, securities fraud cannot be the basis of a civil RICO claim) and must be pled with particularity.  *United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 443 (S.D.N.Y. 2004); *see also Williams v. Affinion Group, LLC*, 889 F.3d 116, 124 (2d Cir. 2018).

A plaintiff satisfies this heightened pleading requirement only if the complaint provides the specific facts and circumstances of the allegedly fraudulent predicate acts, which includes "detail[ing] the specific statements that are false or fraudulent, identify[ing] the speaker, stat[ing] when and where the statements were made, and explain[ing] why the statements were fraudulent." *Williams*, 889 F.3d at 124.

Here, beyond their conclusory allegations of securities fraud, Plaintiffs have utterly failed to allege any specific predicate acts giving rise to their RICO claims.  Plaintiffs appear to rely on statements allegedly made by Mr. Dollinger to Plaintiffs and their counsel after PlantX allegedly breached the subject SPAs, though Plaintiffs fail to allege that such statements were false and/or why they were false and/or how they were made to further any alleged conspiracy to defraud.  *See* (ECF No. 6 at ¶¶ 7 – 20, 158 – 164, 192 – 202).  This is not enough to sustain a RICO claim.

Plaintiffs' conclusory statements that PlantX never intended to take Veg House public and repay the $350,000 (*id*. at ¶¶ 147 – 148) is also insufficient.  *See, e.g.*, *Benedict v. Amaducci*, 1995 U.S. Dist. LEXIS 9681, at *7 (S.D.N.Y. July 12, 1995) ("Plaintiffs 'proceed from the proposition

that since certain future acts did not come to pass, defendants never intended to accomplish them. . . . Such an allegation is merely conclusory.'") (*quoting Johnston v. Norton*, 1993 U.S. Dist. LEXIS 16000, at *17 (S.D.N.Y. Nov. 10, 1993)); *see also CSI Inv. Partners II, L.P. v. Cendant Corp.*, 180 F. Supp. 2d 444, 453 (S.D.N.Y. 2001) ("The simple fact of nonperformance of a promise is insufficient to raise an inference of fraud. A contract may be breached for legitimate business reasons…Contractual breach, in and of itself, does not bespeak fraud") (internal citations and quotations omitted).

Further, Plaintiffs' failure to adequately plead the requisite predicate acts also means Plaintiffs failed to adequately plead the "pattern" or "continuity" element of RICO, because a "pattern of racketeering activity" must consist of at least two predicate acts. 18 U.S.C. § 1961(5). Simply put, Plaintiffs have sued twenty-two parties for RICO violations without any specific factual basis as to the underlying fraudulent conduct.

### III.   Plaintiff Has Not Adequately Pled Its Securities Fraud or Control Person Liability Claims.

The Amended Complaint alleges violations of Section 10(b) and Rule 10b-5 of the Exchange Act against PlantX, Veg House, Mr. Dollinger, Mr. Rapkin, and Ms. Hoffman. (ECF No. 6 at ¶ 211). To adequately allege securities fraud pursuant to Section 10(b) or Rule 10b-5, a pleading must specifically identify: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Champions League, Inc. v. Woodard*, 224 F. Supp. 3d 317, 322 (S.D.N.Y. 2016). Also, importantly, "the mere allegation that a contractual breach involved a security does not confer standing to assert a 10b-5 action." *Capital Mgmt. Select Fund Ltd. v. Bennett*, 680 F.3d 214, 225 – 26 (2d Cir. 2012).

15

Plaintiffs claim Defendants PlantX, Veg House, Mr. Dollinger, Mr. Rapkin, and Ms. Hoffman "made untrue statements of material fact and omitted to state material facts necessary to make the statements not misleading," but do not specify which statements are allegedly fraudulent, which Defendants allegedly made the statements, when the statements were allegedly made, or how those statements resulted in the injury complained of, which is apparently Plaintiffs' "purchase [of] Veg [House] shares at artificially-inflated prices." (ECF No. 6 at ¶¶ 204 – 205). The Amended Complaint references only statements made *after* the alleged breach of contract, when Mr. Dollinger and an attorney were trying to resolve the contractual dispute. (*Id*. at ¶¶ 9 – 20, 157 – 161, 165 – 169, 174 – 175). There is no reference to specific statements made by any other Defendant. *See generally* (ECF No. 6).

Again, Plaintiffs have failed to sufficiently allege specific facts in support of a very serious cause of action against several Defendants. For this reason, Plaintiffs' control person liability claim—which seeks to hold Mr. Dollinger, Mr. Rapkin, Ms. Hoffman, Mr. Khan, and Ms. Frank liable for the securities violations alleged in Count III of the Amended Complaint (ECF No. 6 at ¶¶ 212 – 215)—also fails. *See, e.g.*, *ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (holding that a plaintiff cannot establish control person liability if it fails to allege a violation of securities law). In addition to the aforementioned pleading deficiencies related to Mr. Dollinger, Mr. Rapkin, and Ms. Hoffman, there are no specific, or even general, allegations of fraudulent conduct undertaken by Mr. Khan and Ms. Frank in the Amended Complaint. *See generally* (ECF No. 6).

## IV.    Plaintiffs' Breach of Contract Claim Is Improperly Asserted Against Non-PlantX Defendants.

Plaintiffs' breach of contract claim is brought against all Defendants, except Mr. Abhishek, Mr. Khan, and Ms. Frank. (ECF No. 6 at ¶¶ 216 – 22). As explained *supra*, Plaintiffs' minimal

and conclusory allegations in support of its theories of liability as to the individual Defendants and the non-PlantX and Veg House entity Defendants undermine this claim as against those Defendants. But even the allegations against Veg House are flawed. Assuming, *arguendo*, that the SPAs are valid and enforceable and Plaintiffs performed their obligations thereunder—which the Amended Complaint, strangely, does not allege (*id*.)—it is not clear, based on the Amended Complaint and the representative SPA (ECF No. 10-1), that Veg House breached the contract. *See* (ECF No. 6 at ¶ 217) ("The SPAs required *PlantX* to repurchase Plaintiffs' securities if Veg [House] did not IPO by May 2024 or register Plaintiffs' securities.") (emphasis added).

### V.    Plaintiffs' Conversion Claim Fails Because It Is Premised on Plaintiffs' Breach of Contract Allegations.

Plaintiffs brought their conversion claim against all Defendants and pled as follows in support of this cause of action: (i) the SPAs required PlantX to repurchase the Veg House shares; and (ii) the $350,000 collectively invested by Plaintiffs pursuant to the SPAs constitutes "specifically-identifiable funds that are the proper basis of a conversion claim." (ECF 6 at ¶¶ 224 – 225). But, under New York law, a conversion claim "cannot be predicated on a mere breach of contract," but rather the claim must allege facts independent from those supporting a breach of contract cause of action. *Jeffers v. Am. Univ. of Antigua*, 125 A.D.3d 440 (1st Dep't 2015); *see also Karmilowicz v. Hartford Financial Services Group*, 494 Fed. App'x 153, 158 (2d Cir. 2012) (*citing Wolf v. Nat'l Council of Young Israel*, 264 A.D.2d 416, 417 (2d Dep't 1999)) (affirming dismissal of a conversion claim).

### VI.    Plaintiffs' Unjust Enrichment Claim Is Precluded By the SPAs and Inadequately Alleged Against the Non-PlantX Defendants.

Plaintiffs brought their unjust enrichment claim against all Defendants. *See* (ECF No. 6 at ¶¶ 228 –230). "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish

(1) that the defendant benefitted; (2) at the plaintiffs' expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotations omitted). "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates *in the absence of any agreement*." *Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572, (N.Y. 2005) (internal citations omitted; emphasis added).

Plaintiffs' unjust enrichment claim against PlantX and Veg House is therefore precluded by the existence of the SPAs, particularly since Plaintiffs have not: (i) pled that the SPAs are not binding; (ii) sought recission of the SPAs; or (iii) pled their unjust enrichment count in the alternative, should the SPAs be deemed invalid. *See generally* (ECF No. 6). With respect to the other Defendants, the Amended Complaint broadly speculates that they somehow personally profited from the funds that were invested pursuant to the SPAs, but fails to identify which specific Defendant(s) was/were allegedly unjustly enriched—the very first requirement in pleading that cause of action. (ECF No. 6 at ¶¶ 228 –230).

### C.    <u>Plaintiffs Would Not Be Prejudiced.</u>

To successfully demonstrate that they would be prejudiced if their Motion was denied, Plaintiffs were required to demonstrate not only that Defendants' failure to timely appear or respond resulted in delay—"[d]elay, standing alone, does not establish prejudice" (*Elohim EPF USA, Inc*, 2021 U.S. Dist. LEXIS 105482, at *5 (*citing Enron*, 10 F.3d at 98))—but that the delay "will result in the loss of evidence, create increased difficulties for discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983).

The operative pleading in this Action was filed less than three months ago, and, assuming all Defendants were properly served, most of the deadlines to respond were less than two months ago. Plaintiffs' Motion fails to explain or articulate how Plaintiffs allegedly would be prejudiced if the Court refused to enter default against Defendants. Plaintiffs simply state that, "refusing to

grant default judgments against Defendants would prejudice Plaintiffs, who spent months attempting to negotiate with Defendants both before and after filing this suit, only for Defendants to not even bother to appear." *See* (ECF No. 52 at 17).

The relatively short delay that has occurred as a result of Defendants' ongoing collective attempt to engage experienced New York counsel has not prejudiced Plaintiffs, and Plaintiffs will not be prejudiced by the Court's allowance of this Action to proceed on the merits.

## **CONCLUSION**

Plaintiffs allegedly paid PlantX $350,000 pursuant to the SPAs, and they allege, by and through their Amended Complaint, that they are owed back their respective portions of those funds.  Any claim other than breach of contract against PlantX is baseless, as evidenced by Plaintiffs' wholly deficient allegations against twenty-one parties other than PlantX, including individuals and entities that are barely named throughout the Amended Complaint and have no connection to the underlying transactions.  Defendants have done their best to coordinate and find appropriate counsel and were engaged in pre- and post-litigation settlement discussions with Plaintiffs' counsel for months.  They have meritorious defenses to all of the causes of action brought against them.  Plaintiffs have not been prejudiced by the relatively short delay.  Given this Circuit's strong preference for resolving disputes on the merits, particularly where there is no evidence that Defendants have engaged in bad faith or dilatory conduct, Plaintiffs' Motion should be denied.

Defendants respectfully request that the Court enter an order vacating the Clerk's entry of default and grant Defendants twenty-one (21) days to respond to the Amended Complaint and twenty-eight (28) days to oppose Plaintiffs' motion for injunctive relief and attachment.

Respectfully submitted,

**LUCOSKY BROOKMAN LLP**

Dated: January 28, 2025                By:  */s/ Samuel L. Blatnick*
                                          Samuel L. Blatnick
                                          7300 W. 110th Street
                                          Suite 700
                                          Overland Park, KS 66210
                                          (913) 392-8505
                                          sblatnick@lucbro.com

                                          */s/ Anne Melton*
                                          Anne Melton
                                          111 Broadway
                                          Suite 807
                                          New York, NY 10006
                                          (732) 395-4409
                                          amelton@lucbro.com

                                          ***ATTORNEYS FOR DEFENDANTS***

## CERTIFICATION OF SERVICE

I, the undersigned attorney, hereby certify that a true and correct copy of the above and foregoing was electronically filed using the Court's electronic filing system this 28th day of January, 2025, and served upon all counsel of record via the same.

Dated:  January 28, 2025                */s/ Samuel L. Blatnick*
                                          Samuel L. Blatnick