UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                            :

IVAN CAPLAN et al.,                                                    :

                              Plaintiffs,       :

                                             :                      24-CV-7996 (JMF)

               -v-                                                :

                                             :                    OPINION AND ORDER

SEAN DOLLINGER et al.,                                                :

                           Defendants.        :

                                             :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiffs are nine investors who entered into stock purchase agreements ("SPAs") with Defendant PlantX Life, Inc. ("PlantX") to purchase $650,000 of common stock in PlantX's subsidiary, Defendant Veg House Holdings Inc. ("Veg House"). *See* ECF No. 71-2 ("SAC"), ¶¶ 3-4, 29-38. The Verified Second Amended Complaint (the "Complaint") alleges that Plaintiffs were swindled into buying the stock based on the false representation that their investments would facilitate Veg House's initial public offering ("IPO") when Defendants intended to pocket the money themselves. *See id.* ¶¶ 21, 57, 117, 180. Plaintiffs bring claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, securities fraud, breach of contract, conversion, and unjust enrichment against PlantX, Veg House, and others alleged to be involved in the scheme. *See id.* ¶¶ 192-231.

Now pending are Plaintiffs' motion for preliminary relief, ECF No. 9 ("Pls.' Mot."), and Defendants' motion to dismiss, ECF No. 75. For the reasons that follow, Defendants' motion to dismiss is GRANTED in part and DENIED in part, and Plaintiffs' motion is DENIED.

**BACKGROUND**

The following relevant factual background is, unless otherwise noted, drawn from the Complaint and assumed to be true for purposes of this Opinion and Order. *See, e.g., LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

This case arises from Plaintiffs' $650,000 aggregate purchase of 650,000 shares of Veg House's common stock from PlantX in January 2024. Compl. ¶ 3. Each of the nine Plaintiffs bought their Veg House shares through a functionally identical share purchase agreement ("SPA") with PlantX and Veg House. *Id.* ¶ 4; *see* ECF No. 10-1 ("SPA"). Under the terms of the SPAs, PlantX agreed to repurchase the Veg House stock and return Plaintiffs' investments if Veg House failed to complete an initial public offering ("IPO") at a share price of $5.00 per share by May 2024. Compl. ¶ 7; *See* SPA § 2.4. The SPAs also identified Defendant Sean Dollinger as PlantX's Chief Executive Officer ("CEO") and instructed Plaintiffs to direct all SPA-related inquiries to him. *See* Compl. ¶ 66. Plaintiffs intended for their investments to facilitate Veg House's anticipated IPO. *Id.* ¶¶ 118, 153. But unbeknownst to them, their money was instead misappropriated to "line [Defendants'] own pockets." *Id.* ¶ 24.

When May 2024 came and went without an IPO, Plaintiffs reached out to Dollinger to inquire about PlantX's agreement to repurchase the stock. *Id.* ¶¶ 9-10. Dollinger initially asked Plaintiffs to extend the repurchase date to October 2024, *id.* ¶ 14, but he later claimed that PlantX no longer possessed Plaintiffs' investments, *id.* ¶¶ 13, 43, 161, 220. He also informed Plaintiffs that PlantX's repurchase obligation "ha[d] nothing to do with [him]" because, although he was the "founder of the company," he "ha[s] had 0 to do with the board or management of the company." *Id.* ¶ 19. Thereafter, Plaintiffs learned that Dollinger had a history of scheming with

others to steal money from investors by creating shell companies and diverting the investments for personal gain.  *See id.* ¶¶ 21, 116, 119.

On October 21, 2024, Plaintiffs filed this lawsuit.  *See* ECF No. 1.  They assert civil RICO, securities fraud, breach of contract, conversion, and unjust enrichment claims against some or all of twenty-two Defendants allegedly connected to the stock purchase: six individuals, including Dollinger (together, the "Individual Defendants"); and sixteen entities, including PlantX and Veg House (together, the "Entity Defendants").  *See id.* ¶¶ 192-230.[1]

The Entity Defendants are alleged to be "alter egos of each other" and "to have acted in concert to help the Individual Defendants steal Plaintiffs' investments."  *Id.* ¶ 115.  Many of the sixteen Entity Defendants share three addresses.  *See id.* ¶¶ 70, 76, 86, 88, 101, 104, 109, 132.  For example, four of the Entity Defendants are alleged to be headquartered at 6800 Indian Creek Drive, Suite 101, Miami Beach, Florida 33141, which is Dollinger's residence.  *Id.*  ¶¶ 57, 70, 76-77, 88.  Many of the Entity Defendants are wholly owned subsidiaries of either PlantX or Veg House.  *Id.* ¶ 69, 93-94, 99-100.  In 2023, PlantX sold many of these subsidiaries to Veg House in exchange for six million shares of Veg House stock.  *Id.* ¶ 72.  Despite the subsidiary Entity Defendants being United States companies, PlantX was incorporated in Canada and Veg House was incorporated in the Cayman Islands to "dodge corporate responsibility while taking advantage of American investors, consumers, and markets."  *Id.* ¶¶ 144, 146, 149.

---

[1]     The Individual Defendants are (1) Sean Dollinger, (2) Lorne Rapkin, (3) Alexandra Hoffman, (4) Kumar Abhishek, (5) Shariq Khan, and (6) Julia J. Frank.  The Entity Defendants are (1) PlantX; (2) Veg House; (3) Dollinger Holdings, LLC; (4) LQR House, Inc.; (5) South Doll Limited Partnership; (6) 1347608 B.C. Limited Corp.; (7) Cay Innovations Ltd.; (8) PlantX Midwest, Inc.; (9) Veg House Illinois, Inc.; (10) PlantX Living, Inc.; (11) Vegaste Technologies US Corp.; (12) Little West, LLC; (13) Plant-Based Deli, LLC; (14) WS West, LLC; (15) Veg House Holdings GP Inc.; and (16) New Deli Hillcrest, LLC.

The Individual Defendants are officers of the Entity Defendants.  Three of the Individual

Defendants — Dollinger, Rapkin, and Hoffman — are alleged to be first cousins who have

worked together by "continually swap[ing] titles and ownership over" the Entity Defendants and

"transfer[ring] assets among close friends and family" to prevent victims from recovering their

investments.  *Id.* ¶¶ 23-26.  Rapkin and Hoffman both signed the SPAs, with Rapkin signing as

PlantX's CEO and Hoffman signing as Veg House's CEO.  *Id.* ¶ 4.  Next to these signatures was

an "Address for Notice" listing Dollinger as PlantX's CEO.  *See* SPA at 14.  Frank is alleged to

be the Chief Operating Officer ("COO") of both PlantX and Veg House as well as the former

CEO of PlantX, *id.* ¶ 113, while Khan is alleged to be Veg House's Chief Financial Officer

("CFO") and to have worked with Dollinger in the past to perpetrate a similar scheme through a

different company, *id.* ¶¶ 106-107, 123-134, 183.  Lastly, Abhishek is alleged to be the CFO of

one Entity Defendant and to have acted through another Entity Defendant to acquire 2.25 million

Veg House shares "as PlantX's 'repayment' of a 'debt.'"  *Id.* ¶¶ 89, 91.

On November 4, 2024, Plaintiffs moved, pursuant to Rules 64 and 65 of the Federal

Rules of Civil Procedure, for a temporary restraining order, preliminary injunction, and

attachment to preliminarily restrain, "at bare minimum," the then-alleged principal investment

amount of $350,000 for escrow.  *See* Pls.' Mot. 20; ECF No. 8.[2]  The Court declined to resolve

the motion on an *ex parte* basis and permitted Defendants an opportunity to appear and oppose

the motion.  *See* ECF Nos. 12, 75.  Defendants now also move, pursuant to Rules 12(b)(2) and

---

[2]      When Plaintiffs' motion for preliminary relief was filed, the then-operative complaint
alleged only a principal investment amount of $350,000, instead of $650,000.  *See* ECF No. 6, at
¶ 3.  Plaintiffs' motion requested, as alternative relief, an attachment of $650,000 and certain
restrictions on Defendants' ability to transfer their assets.  *See* Pls.' Mot. 20.

12(b)(6), to dismiss most of the claims in the Complaint for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.  *See* ECF No. 75.

## DEFENDANTS' MOTION TO DISMISS

The Court will begin with Defendants' motion to dismiss.  Defendants move, pursuant to Rule 12(b)(2), to dismiss Plaintiffs' claims against all but five Defendants for lack of personal jurisdiction and move, pursuant to Rule 12(b)(6), to dismiss all claims, except for the breach of contract claim against PlantX, for failure to state a claim.  ECF No. 75; *see* ECF Nos. 76 ("Defs.' Mem."), 83 ("Defs.' Reply").  In response, Plaintiffs withdraw their civil RICO claims, conceding that "Defendants correctly argue that the SAC's RICO claims cannot stand because they arise out of the purchase and sale of securities."  ECF No. 81 ("Pls.' Mem."), at 7. Accordingly, Plaintiffs' RICO claims — Counts I and II — are dismissed without prejudice.  *See Doe v. Grindr, LLC*, No. 21-CV-4589 (AMD) (PK), 2022 WL 3139101, at *4-6 (E.D.N.Y. Aug. 5, 2022) (dismissing withdrawn claims without prejudice).  The Court will address Defendants' remaining arguments in turn, starting with personal jurisdiction.  *See, e.g.*, *Fuld v. Palestine Liberation Org.*, Nos. 24-20, 24-151, 2025 WL 1716140, at *6 (U.S. June 20, 2025) ("We have long held that a 'court must have . . . power over the parties before it (personal jurisdiction) before it can resolve a case.'" (quoting *Lightfoot v. Cendant Mortgage Corp.*, 580 U.S. 82, 95 (2017)); *Dfinity Found. v. New York Times Co.*, 702 F. Supp. 3d 167, 177 n.54 (S.D.N.Y. 2023), *aff'd*, No. 23-7838-CV, 2024 WL 3565762 (2d Cir. July 29, 2024) ("As a general matter, personal jurisdiction is 'a threshold question to be addressed prior to consideration of the merits of a claim.'" (quoting *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013)).

**A.  Personal Jurisdiction**

To defeat a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing that jurisdiction exists.  *See, e.g.*, *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).  Such a showing "entails making 'legally sufficient allegations . . . ,' including 'an averment of facts that, if credited[,] would suffice'" to establish that jurisdiction exists.  *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (quoting *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)); *see generally Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (per curiam).  Critically, a "plaintiff is required to establish personal jurisdiction separately over each defendant," *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021), and "with respect to *each* claim asserted," *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).  When evaluating a Rule 12(b)(2) motion, a court must "view[] all facts in the light most favorable to the non-moving party." *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011).  However, "'[c]onclusory non-fact-specific jurisdictional allegations' or 'legal conclusion[s] couched as a factual allegation' will not establish a prima facie showing of jurisdiction."  *DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 Fed. App'x 6, 8 (2d Cir. 2018) (summary order) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)).

Defendants concede (or, at least, do not dispute) that five Defendants — PlantX, Veg House, Dollinger, Rapkin, and Hoffman (the "Signatory Defendants") — consented to jurisdiction here through the SPAs.  *See* Defs.' Reply 10 & n.4; *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-

selection clauses in contractual agreements.").[3]   But they contend that the Court lacks personal

jurisdiction over the remaining Defendants (the "Non-Signatory Defendants").   Defs.' Mem 8-9;

Defs.' Reply 10.   Plaintiffs counter that the forum-selection clause in the SPAs binds these

Defendants even though they did not sign the SPAs for either of two reasons: first, because the

clause expressly extends to lawsuits involving the SPAs brought against "[a]ffiliates, directors,

officers, shareholders, employees or agents" of the signatory parties, *see* SPA § 5.6; Pls.' Mem.

39-40; and second, because the clause binds the Non-Signatory Defendants as alter egos of the

signatories, *see* Pls.' Mem. 38.[4]   For separate reasons, they contend that the Court has personal

jurisdiction over all Defendants at least with respect to their securities fraud claims.   The Court

will begin with Plaintiffs' broadest theories of personal jurisdiction.

Plaintiffs' first theory can be swiftly rejected.   Under "New York contract law, it is

axiomatic that a contract cannot bind a non-party unless the contract was signed by the party's

agent, the contract was assigned to the party, or the signatory is in fact the alter ego of the party."

*Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 390 (S.D.N.Y. 2019) (cleaned

up); *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying

that a contract cannot bind a nonparty.").   That is true even where an "agreement purport[s] to

bind successors and assigns of the parties to the agreement."   *Arcadia Biosciences, Inc.*, 356 F.

Supp. 3d at 390 (quoting *Amalgamated Transit Union Local 1181, AFL-CIO v. City of New*

---

[3]      Dollinger's signature does not appear on the SPAs, but he is listed as PlantX's CEO
under the "Address for Notice" next to Hoffman's and Rapkin's signatures.  SPA at 14.  That is
enough for Defendants to "concede that Mr. Dollinger falls with[in]" the group of Defendants
subject to the forum-selection clause.  *See* Defs.' Reply 10 n.4.

[4]      Plaintiffs do not make — and, thus, have forfeited — any argument that the Non-
Signatory Defendants are bound by the forum selection clause because they are "closely related"
to PlantX.  *See MW of N. Am. LLC v. M/V Courage*, 254 F. Supp. 591, 598 (S.D.N.Y. 2017).

*York*, 846 N.Y.S. 2d 336, 338 (N.Y. App. Div. 2d Dep't 2007)).  Applying that principle in

circumstances much like those here, Judge Engelmayer recently held that an "agreement's

waiver of personal jurisdiction — by its plain text — d[id] not extend to" the parties' board

members.  *Beskrone v. Berlin*, 656 F. Supp. 3d 496, 512 (S.D.N.Y. 2023).  Just so here.

Whatever their relationships to the other Defendants may be, the Non-Signatory Defendants are

not parties to the SPAs and, thus, not bound by the provision waiving personal jurisdiction over

lawsuits against the parties' "affiliates, directors, officers, shareholders, employees or agents."

SPA § 5.6.

Plaintiffs' second theory — that the Non-Signatory Defendants are alter egos of the

Signatory Defendants — requires more discussion but also falls short.  "[I]n general, 'alter egos

are treated as one entity' for jurisdictional purposes."  *Transfield ER Cape Ltd. v. Indus.

Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) (quoting *Wm. Passalacqua Builders, Inc. v.

Resnick Developers South, Inc.*, 933 F.2d 131, 142-43 (2d Cir. 1991)); *see, e.g.*, *Platina Bulk

Carriers Pte Ltd. v. Praxis Energy Agents DMCC*, No. 20-CV-4892 (NRB), 2021 WL 4137528,

at *4 (S.D.N.Y. Sept. 10, 2021) ("[A] forum selection clause may be enforced against a

[signatory] company's alter ego.").  "In considering whether an individual and a corporate entity

are alter egos of one another," however, "'[i]t is well settled that . . . courts are reluctant to

disregard the corporate entity.'"  *Liberty Highrise Pvt. Ltd. v. Praxis Energy Agents DMCC*, 632

F. Supp. 3d 562, 570 (S.D.N.Y. 2022) (quoting *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594,

600 (2d Cir. 1989)).  "[U]nder New York law, a court may pierce the corporate veil where '1)

the owner exercised complete domination over the corporation with respect to the transaction at

issue, *and* 2) such domination was used to commit a fraud or wrong that injured the party

seeking to pierce the veil.'"  *Lakah v. UBS AG*, 996 F. Supp. 2d 250, 260 (S.D.N.Y. 2014)

(quoting *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001)).[5]

These standards are "relaxed where the *alter ego* theory is used not to impose liability, but merely to establish jurisdiction." *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 475 F. Supp. 2d 456, 459 (S.D.N.Y. 2007); *accord D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 Fed. App'x 195, 196 (2d Cir. 2005) (summary order) ("[T]he exercise of personal jurisdiction over an alleged alter ego requires application of a less onerous standard than that necessary for equity to pierce the corporate veil for liability purposes under New York law." (cleaned up)). "In the jurisdictional context, a plaintiff need only show that the allegedly controlled entity was a shell for the allegedly controlling party." *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 681 (S.D.N.Y. 2016) (internal quotation marks omitted). "In determining whether an entity is properly understood as an alter-ego for jurisdictional purposes," courts consider a variety of factors, including "[1] whether there was a failure to observe corporate formalities, [2] evidence of undercapitalization, [3] intermingling of personal and corporate funds, [4] shared office space and phone numbers, [5] any overlap in ownership and directors and [6] whether the corporation was used to perpetrate a wrongful act against the plaintiffs." *Long Side Ventures LLC v. Hempacco Co.*, No. 22-CV-08152 (ALC), 2023 WL 6386888, at *7 (S.D.N.Y. Sept. 29, 2023) (internal quotation marks omitted). "No one factor is determinative,

---

[5]    Courts have varied with respect to what law governs the alter ego inquiry for jurisdictional purposes. *See, e.g.*, *In re Lyondell Chem. Co.*, 543 B.R. 127, 139 n.38 (Bankr. S.D.N.Y. 2016) (discussing cases). The Court applies New York law here because neither party urges a choice-of-law inquiry and no material difference in outcome would result under New York and federal common law. *See, e.g.*, *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 475 F. Supp. 2d 456, 458-59 (S.D.N.Y. 2007) (applying New York law where the "defendants . . . failed to establish a true conflict of laws"); *accord In re Platinum & Palladium Antitrust Litig.*, No. 14-CV-9391 (GHW), 2017 WL 1169626, at *47 (S.D.N.Y. Mar. 28, 2017).

but rather the key inquiry is whether the corporation is being used by the alleged dominating entity to advance its own personal interests as oppose[d] to furthering the corporate ends." *CesFin Ventures LLC v. Al Ghaith Holding Co. PJSC*, No. 21-CV-1395 (PGG) (SDA), 2022 WL 18859076, at *5 (S.D.N.Y. Dec. 10, 2022) (internal quotation marks omitted).

The allegations here are insufficient to establish that the Non-Signatory Defendants are alter egos even under the more relaxed standards that apply to personal jurisdiction. Granted, the Complaint alleges that many of the Non-Signatory Defendants shared officers and directors, *see e.g.,* Compl. ¶¶ 59, 61, 67, as well as office spaces (one being Dollinger's residence, no less), *see e.g., id.* ¶¶ 70, 76, 132. But courts routinely hold that such allegations, standing alone, are insufficient. *See e.g., Parsons v. Kal Kan Food, Inc.*, 892 N.Y.S. 2d 246, 248 (N.Y. App. Div. 3rd Dep't 2009) (rejecting alter ego theory of personal jurisdiction where two companies shared "an address and phone number," "use[d] the same Web site and promotional brochure," and shared "officers and directors"); *Vibes Int'l Inc., SAL v. Iconix Brand Grp., Inc.*, No. 18-CV-11449 (JGK), 2020 WL 3051768, at *8 (S.D.N.Y. June 8, 2020) ("Allegations of complete ownership, common officers and personnel, and shared office space are, without more, insufficient for the Court to infer that [the alleged dominated company] was controlled and dominated by [the alleged dominating company.]"); *Bd. of Managers of Gansevoort Condo. v. 325 W. 13th, LLC*, 993 N.Y.S. 2d 901, 902 (N.Y. App. Div. 1st Dep't 2014) (noting that "use of common office space, the same telephone number and the same email account, and defendant's showcasing of the condominium units on its website is relatively insignificant"); *c.f. U.S. Barite Corp. v. M.V. Haris*, 534 F. Supp. 328, 329-30 (S.D.N.Y. 1982) ("Superficial indicia such as common offices and telephone numbers between corporate entities is not enough to show that one corporation is an alter ego of another."); *In re All Year Holdings Ltd.*, 648 B.R. 434, 449

(S.D.N.Y. 2022) ("[U]nder alter ego law, allegations of complete ownership, common officers and personnel, and shared office space are, without more, insufficient to impose a subsidiary's contractual liability on its parent." (internal quotation marks omitted)).  Where, as here, the defendants are "closely-held corporations," such "facts are not uncommon" and "must be considered in the context of other factors showing domination."  *In re Adler*, 467 B.R. 279, 291 (Bankr. E.D.N.Y. 2012), *appeal denied, judgment aff'd sub nom. Ng v. Adler*, 518 B.R. 228 (E.D.N.Y. 2014); *see also William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 601 (2d Cir. 1989) (noting that "the trappings of sophisticated corporate life are rarely present" "in the case of small privately held corporations").

Plaintiffs' other assertions about the Non-Signatory Defendants' abuse of PlantX's corporate form are far too generalized and conclusory to suffice.  Although the Complaint alleges that PlantX was undercapitalized, *see e.g.,* Compl. ¶¶ 42, 116, 141, it fails to connect undercapitalization in any concrete way to each Non-Signatory Defendant.  For example, the Complaint alleges that "Defendants have worked together to move PlantX's assets — including Plaintiffs' cash — to other Defendants in order to render PlantX insolvent," Compl. ¶ 27; that "Defendants habitually engage in self-dealing and use investors' funds to pay their own close friends and family members," *id.* ¶ 119; that "the Individual Defendants have used and continue to use Plaintiffs' money as their own piggy banks," *id.* ¶ 118; that "Defendants have stolen money from innocent investors like Plaintiffs," *id.* ¶ 180, and that "Defendants . . . create new shell companies and transfer investors' money among those companies and, eventually, for the individual Defendants' own personal benefit," *id.* ¶ 181.  Such allegations, however, violate the rule against group pleadings.  *See In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021) ("To allege personal jurisdiction over a defendant, group

pleading is not permitted.").  Relatedly, they do not identify specific facts or details about how each Non-Signatory Defendant used PlantX or Veg House to transfer assets for their own benefit, engage in self-dealing, or otherwise serve as their shell companies.  *See Long Side Ventures LLC*, 2023 WL 6386888, at *7 ("A plaintiff must make sufficient allegations of fact to create an inference that Defendants had alter-ego status."); *Koh v. Koo*, No. 22-CV-6639 (JMF), 2023 WL 5352786, at *3 (S.D.N.Y. Aug. 21, 2023) ("[The plaintiff's] repeated assertions that [the defendant] exercised 'complete domination and control' are plainly insufficient on their own.").

Indeed, courts have found similar allegations too conclusory to plausibly plead alter ego status.  *See e.g., Long Side Ventures LLC*, 2023 WL 6386888, at *7 (finding conclusory an allegation where "Plaintiffs d[id] not detail how Defendants cooperated to transfer assets fraudulently, or why their only intent was to render [the alleged alter ego] 'judgment-proof'"); *Miller v. Pac. Inv. Mgmt. Co. LLC*, No. 12-CIV-4122 (LTS) (JCF), 2013 WL 12305507, at *4 (S.D.N.Y. Apr. 23, 2013) (finding conclusory an allegation that "[the defendant] stole money from its shareholders to settle a case"); *Feinberg v. Katz*, No. 99 CIV. 45 (CSH), 2002 WL 1751135, at *14 (S.D.N.Y. July 26, 2002) ("While [the complaint] also alleges that [two defendants] "controlled" FKG, there are no facts set forth which indicate the manner in which [one defendant], who apparently did not set up the company, controlled [the company]."); *Apace Commc'ns, Ltd.*, 522 F. Supp. 2d at 522 (rejecting as conclusory allegations that the defendants "ignored the entity of the corporation and treated the [alleged alter ego] as a mere instrumentality or conduit for the transaction of their own private business").  In light of these cases, Plaintiffs' reliance on an alter ego theory to assert jurisdiction over the Non-Signatory Defendants fails.

That leaves Plaintiffs' narrower backup contention: that the Court has personal jurisdiction over the Non-Signatory Defendants at least with respect to the securities fraud claims. *See* Pls' Mem. 39. Plaintiffs' securities fraud claims are governed by the Exchange Act, "which provides for worldwide service of process and permits the exercise of personal jurisdiction to the limit of the Fifth Amendment's Due Process Clause." *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 487 (S.D.N.Y. 2011), *aff'd sub nom. Alki Partners, L.P. v. Windhorst*, 472 Fed. App'x 7 (2d Cir. 2012); *see also* 15 U.S.C. § 78aa. The metes and bounds of those limits, however, are not clearly delineated. The Second Circuit has long held that the Fifth Circuit Due Process Clause is coextensive with the Fourteenth Amendment's Due Process Clause. *See, e.g.*, *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016). But the Supreme Court recently abrogated those decisions, holding that "the Due Process Clause of the Fifth Amendment necessarily permits a more flexible jurisdictional inquiry commensurate with the Federal Government's broader sovereign authority." *Fuld*, 2025 WL 1716140, at *9. At the same time, the Court cautioned that "the prospect remains that the Fifth Amendment might entail a similar 'inquiry into the reasonableness of the assertion of jurisdiction in the particular case.'" *Id.* at *12.

In this case, Plaintiffs allege sufficient contacts with the United States to support personal jurisdiction with respect to their securities fraud claims. ("Because the Exchange Act authorizes worldwide service of process, the relevant contacts for purposes of the 'minimum contacts' analysis are those with the United States as a whole." *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 642 (S.D.N.Y. 2017).) For one thing, many of the Non-Signatory Defendants are alleged to be citizens of the United States. *See e.g.*, Compl. ¶¶ 84-88, 94, 100-101, 104, 109; *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 134 (S.D.N.Y.

2021) ("A Court has general personal jurisdiction over a defendant where the individual is domiciled.").  For another, Plaintiffs also allege that the Non-Signatory Defendants were involved in a scheme "directed toward the United States." *S.E.C. v. Straub*, 921 F. Supp. 2d 244, 255 (S.D.N.Y. 2013); *see e.g.,* Compl. ¶ 74 ("Defendants Hoffman, Khan, Frank, and Rapkin have signed Veg's filings with the Securities and Exchange Commission"); *id.* ¶¶ 91-92 ("Through Defendant and Bahamas corporation 'Cay Innovations' Ltd., Mr. Abhishek acquired 2.25 million Veg shares as PlantX's 'repayment' of a 'debt.'").  In fact, Defendants all but concede minimal contacts with the United States by arguing only that Plaintiffs fail to sufficiently allege that "Defendants directed conduct within *New York*."  Defs.' Reply 10 (emphasis added); *New York. Nutriband, Inc. v. Kalmar*, No. 19CV2511NGGSJB, 2020 WL 4059657, at *3 (E.D.N.Y. July 20, 2020) (finding a similar argument by defendants to concede sufficient contacts with the United States).  Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction is denied as to Plaintiffs' securities fraud claims.

In sum, Defendants' motion to dismiss for lack of personal jurisdiction the claims against the Non-Signatory Defendants is granted as to Plaintiffs' state law claims and denied as to Plaintiffs' securities fraud claims.

## B.  Failure to State a Claim

That leaves Plaintiffs' state law claims (other than their civil RICO claims) against PlantX, Veg House, Dollinger, Rapkin, and Hoffman, and Plaintiffs' securities fraud claims against all Defendants.  As noted, Defendants move, pursuant to Rule 12(b)(6), to dismiss all of those claims, other than the breach of contract claim against PlantX, for failure to state a claim. A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and requires a court to determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a

plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  When ruling on a Rule 12(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g., Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).  To survive such a motion, however, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The Court will address each claim in turn.

### 1.  Count V: Breach of Contract

First, although Defendants do not challenge the breach of contract claim against PlantX, they do move to dismiss the claim against Veg House, Dollinger, Rapkin, and Hoffman. *See* Defs.' Mem. 18.  Plaintiffs contend that, even though Veg House, Dollinger, Rapkin, and Hoffman did not agree to repurchase any Veg House stock under the SPAs, each is nonetheless liable for PlantX's breach of contract under an alter ego theory of liability. *See* Compl. ¶¶ 220-21.  "New York law permits a plaintiff to 'pierce the corporate veil' and sue a non-signatory for breach of contract when the non-party is an alter ego of one or more signatories." *Mirage Ent., Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 34 (S.D.N.Y. 2018).

Before evaluating Plaintiffs' allegations, the Court considers the "knotty" question of whether Plaintiffs' veil-piercing claim is subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361, 374 (S.D.N.Y. 1997); *accord Farley v. Davis*, No. 91-CV-5530, 1992 WL 110753, at *6 (S.D.N.Y. May 8, 1992).  "[A] claimant must satisfy the heightened pleading

standard of [Rule] 9(b) to the extent that its veil-piercing claim rests on allegations of fraud," but, "under the alter ego theory of liability, a veil-piercing claimant may [also] prevail by 'identify[ing] some non-fraudulent 'wrong' attributable to the defendant's complete domination' of the corporation in question." *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 223 (S.D.N.Y. 2002) (quoting *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 121-22 (S.D.N.Y. 1996)).  In this case, Plaintiffs allege that Defendants engaged in non-fraudulent wrongs, including "misappropriat[ing] Plaintiffs' money," "render[ing] PlantX insolvent," and "engag[ing] in self-dealing."  Compl. ¶¶ 116, 118. Accordingly, Plaintiffs' breach of contract claim need not satisfy the heightened pleading requirements of Rule 9(b).  *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003) ("[A]t least in New York, since veil-piercing can be established without proving any element of fraud, the heightened pleading standard does not apply to every veil-piercing allegation."); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 274 (S.D.N.Y. 2004) ("In this district, veil-piercing claims are subject to the pleading requirements imposed by Fed. R. Civ. P. 8(a)[.]"); *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 292 (S.D.N.Y. 2005) ("The domination and control elements of [a claim of alter ego liability for securities fraud] however, need comply only with Rule 8.").

Applying Rule 8(a)'s more liberal pleading standards, the Court concludes that Plaintiffs plead plausible alter ego liability as to Dollinger.  All told, the Complaint plausibly alleges that Dollinger exercised dominance over PlantX and that he used this dominance to harm Plaintiffs. First, as already noted above, the allegations establish that PlantX is undercapitalized, as Defendants are alleged to have rendered PlantX "insolvent and unable to return Plaintiffs' investments."  Compl. ¶ 27; *see also id.* ¶¶ 42, 141, 158; *Shantou Real Lingerie Mfg. Co. v.*

*Native Grp. Int'l, Ltd.*, 401 F. Supp. 3d 433, 441 (S.D.N.Y. 2018) ("Insolvency may also be weighed as evidence that a corporation was inadequately capitalized.").  PlantX also allegedly shares an office space and officers with other companies closely affiliated with Dollinger.  *See Okapi Partners, LLC v. Holtmeier*, No. 18-CV-6381 (PKC), 2019 WL 1517553, at *2, *4 (S.D.N.Y. Apr. 8, 2019) (noting that the dominated corporation "shared its office space with other companies affiliated with defendants" as one factor justifying veil piercing).  Indeed, PlantX's company headquarters is alleged to be one of Dollinger's personal residences.  *See* Compl. ¶¶ 56, 69, 76.  And an attorney who has represented Dollinger for over a decade also appears to represent PlantX.  *See id.* ¶¶ 81, 175.  The Complaint also alleges facts indicating that Dollinger wields significant power over PlantX's business decisions.  *See e.g., id.* ¶ 65 (alleging that the SPAs identified Dollinger as PlantX's CEO and instructed all demands to be addressed to him); *id.* ¶ 16 (alleging that Dollinger "personally responded to Plaintiffs' inquiries from the email address sean@plantx.com, with an email signature of 'PlantX Management Sean Dollinger Founder PlantX.com'"); *id.* ¶ 14 ("Mr. Dollinger asked Plaintiffs to execute a contract amending the Repurchase Date from May to October 2024.").  Taking these alleged facts together and treating them as true, the Court finds that Plaintiffs plausibly allege Dollinger's dominance over PlantX.

In addition, Plaintiffs' allegations as to Dollinger easily satisfy the second requirement for veil piercing.  *See Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) ("While complete domination of the corporation is the key to piercing the corporate veil, . . . such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward [the party seeking piercing] is required." (quoting *Morris v. New York State Dep't of Taxation & Fin.*, 623 N.E. 2d 1157, 1160-61 (N.Y. 1993)).  This requirement "can be satisfied

either by showing outright fraud, or another type of wrong, such as a breach of a legal duty, or a

dishonest and unjust act in contravention of plaintiff's legal rights." *CBF Industria de Gusa S/A*

*v. AMCI Holdings, Inc.*, 316 F. Supp. 3d 635, 649 (S.D.N.Y. 2018) (cleaned up). While "a

simple breach of contract, without more, does not constitute a fraud or wrong warranting the

piercing of the corporate veil," *Etage Real Est. LLC v. Stern*, 182 N.Y.S. 3d 47, 49 (N.Y. App.

Div.1st Dep't 2022) (internal quotation marks omitted), it is well established that stripping

corporate assets to render an entity judgment proof does, *see Am. Federated Title Corp. v. GFI*

*Mgmt. Servs., Inc.*, 126 F. Supp. 3d 388, 404 (S.D.N.Y. 2015), *aff'd*, 716 Fed. App'x 23 (2d Cir.

2017) (collecting cases). The Complaint here plainly asserts sufficient facts to link Dollinger's

actions to Plaintiffs' inability to collect on its investments. For example, Plaintiffs' assert that

Dollinger was involved in the stripping PlantX of assets "to render [it] insolvent and unable to

return Plaintiffs' investments," Compl. ¶ 27, then later informed Plaintiffs after PlantX's agreed-

upon repurchase deadline that "PlantX does not have the money to pay them," *id.* ¶ 159. At this

stage, these allegations suffice to withstand dismissal of Plaintiffs' alter ego claims against

Dollinger. *See Network Enters., Inc. v. APBA Offshore Prods., Inc.*, No. 01-CV-11765 (CSH),

2002 WL 31050846, at *4 (S.D.N.Y. Sept. 12, 2002) (noting that "courts in this circuit have

taken a generous view of claims based on the corporate veil piercing doctrine" due to "the fact

intensive nature of this inquiry").

     The Court concludes that, by contrast, Plaintiffs' alter ego allegations against Veg House,

Rapkin, and Hoffman fall short of the "very demanding" standard for veil piercing. *Reynolds*,

136 F. Supp. 3d at 525.[6] Even under Rule 8(a)'s liberal pleading standards, Plaintiffs' alter ego

---

[6]    Technically speaking, Veg House is a party to the SPAs for purposes of one section, Article VI, but that section creates no repurchase obligation to Plaintiffs. ECF No. 10-1 at 12-13. In opposing Defendants' motion to dismiss, Plaintiffs do not contend that Veg House is liable for

allegations are inadequate to sustain breach of contract claims against Veg House, Rapkin, and Hoffman, substantially for the reasons discussed above in connection with the Court's personal jurisdiction analysis.  As explained there, Plaintiffs' allegations regarding an overlap in officers, personnel, and office locations between Veg House and PlantX, without more, do not suffice.  *See Vibes Int'l Inc., SAL*, 2020 WL 3051768, at *8.  And although Rapkin and Hoffman are identified in the Complaint as officers of various Entity Defendants, *see* Compl. ¶¶ 59, 61, 65, 67, the remaining allegations about their dominance over PlantX suffer from the same deficiencies as the allegations concerning the Non-Signatory Defendants.  *See e.g., id.* ¶ 116 (alleging, in conclusory and group fashion, that "the Entity Defendants . . . are completely dominated by the Individual Defendants"); *see also, e.g.*, *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 Fed. App'x 13, 15 (2d Cir. 2014) (summary order) ("[G]eneralized and conclusory allegations regarding common ownership, employees, management, control, and decisionmaking between [entities] . . . are plainly insufficient to state a claim of alter ego status.").  Given that such allegations were too conclusory to satisfy even the "less onerous standard" for alter ego *jurisdiction*, *see City of Long Beach v. Total Gas & Power N. Am., Inc.*, 465 F. Supp. 3d 416, 438 (S.D.N.Y. 2020), *aff'd*, No. 20-2020-CV, 2021 WL 5754295 (2d Cir. Dec. 3, 2021), it follows that they are insufficient to plausibly allege alter ego *liability*.

In sum, Defendants' motion to dismiss the breach of contract claims must be and is granted as to Veg House, Rapkin, and Hoffman but denied as to Dollinger.

---

breach of its own repurchase obligations under the SPAs; instead, their breach argument as to Veg House is limited to the argument that it is liable as an alter ego of PlantX.  *See e.g.,* Compl. ¶ 218 ("The SPAs required PlantX to repurchase Plaintiffs' securities if Veg [House] did not IPO by May 2024 or register Plaintiffs' securities."); Pls' Opp'n 7-8 (arguing that "all Defendants — who claim that PlantX is too poor to refund Plaintiffs' investments — are jointly liable for PlantX's debts.").

### 2.  **Count VI: Conversion**

Next, Defendants' motion to dismiss Plaintiffs' conversion claims against all remaining Defendants — PlantX, Veg House, Dollinger Rapkin, and Hoffman — is easily granted because the claims are duplicative of the breach of contract claims.  In New York, "[c]onversion is the 'exercise of unauthorized dominion over the property of another in interference with a plaintiff's legal title or superior right of possession.'"  *R.B. Dev., Co. v. Tutis Cap. LLC*, No. 12-CV-1460 (CBA) (SMG), 2013 WL 12358006, at *19 (E.D.N.Y. Sept. 27, 2013) (internal quotation marks omitted).  "However, a conversion claim may only succeed . . . if a plaintiff alleges wrongs and damages distinct from those predicated on a breach of contract."  *Jakob v. JPMorgan Chase Bank, N.A.*, 639 F. Supp. 3d 406, 414 (E.D.N.Y. 2022) (cleaned up); *see Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 431 (S.D.N.Y. 2004) ("A conversion claim . . . that merely duplicates a breach of contract claim is not actionable.").  Put differently, a plaintiff bringing a conversion claim must "plead an actionable wrong distinct from their breach of contract claim."  *W.B. David & Co. v. DWA Commc'ns, Inc.*, No. 02-CV-8479 (BSJ), 2004 WL 369147, at *6 (S.D.N.Y. Feb. 26, 2004)

Measured against these principles, Plaintiffs' conversion claims fall short.  Plaintiffs' conversion claims rely on the same facts underlying their breach claims, *see* Compl. ¶ 225 (alleging that "[t]he SPAs required PlantX to repurchase Plaintiffs' securities if Veg did not IPO by May 2024 and Veg to register Plaintiffs' securities"), and assert no distinct conversion damages, *see id.* ¶ 226 (alleging $650,000 in damages).  In such circumstances, courts have dismissed conversion claims brought against even non-signatories as duplicative of a contract claim.  *See, e.g.*, *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 204 (S.D.N.Y. 2011) (Sullivan, J.); *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp.

2d 147, 165 (E.D.N.Y. 2012).  To the extent that courts have declined to do so, it is because the

plaintiff has made allegations that the non-signatory defendants engaged in "actionable conduct

beyond the contract."  *See e.g., Wells Fargo Bank, N.A.*, 2013 WL 696651, at *5.  Here,

however, Plaintiffs make no such allegations against Defendants and assert merely — in their

own words — "classic conversion facts."  Pls.' Mem. 33; *see, e.g.*, *Physicians Mut. Ins. Co. v.*

*Greystone Servicing Corp.*, No. 07-CV-10490 (NRB), 2009 WL 855648, at *10 (S.D.N.Y. Mar.

25, 2009) ("Even if a plaintiff meets all of the elements of a conversion claim, [] the claim will

still be dismissed if it is duplicative of a breach of contract claim.").

Accordingly, Defendants' motion to dismiss Plaintiffs' remaining conversion claims is

granted under Rule 12(b)(6).

### 3.  Count VII: Unjust Enrichment

Defendants' motion to dismiss Plaintiffs' unjust enrichment claims against the remaining

Defendants is also easily granted.  A claim for unjust enrichment is "a New York common law

quasi-contract cause of action requiring the plaintiff to establish: '(1) that the defendant

benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require

restitution.'"  *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (quoting

*Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).  As Defendants correctly observe, the

Complaint here only "broadly speculates that [Defendants] somehow personally profited from

the funds that were invested pursuant to the SPAs, but fails to identify which specific

Defendant(s) was/were allegedly unjustly enriched."  Defs' Mem. 20.  Plaintiffs' "[f]ailure to

plead facts identifying with any specificity the benefit" each of these Defendants "is alleged to

have received is fatal" to their unjust enrichment claims.  *See BAT LLC v. TD Bank, N.A.*, No.

15-CV-5839 (RRM) (CLP), 2018 WL 4922736, at *13 (E.D.N.Y. July 31, 2018), *report and*

*recommendation adopted*, 2018 WL 4693644 (E.D.N.Y. Sept. 28, 2018); *see, e.g.*, *Cedar Cap. Mgmt. Grp. Inc. v. Lillie*, 193 N.Y.S.3d 700 (N.Y. Sup. Ct. 2023), *aff'd*, 231 N.Y.S.3d 13 (N.Y. App. Dev. 1st Dep't 2025) (dismissing a plaintiff's unjust enrichment claims because "[a] failure to make any distinction between defendants is an improper group pleading").

Accordingly, Defendants' motion to dismiss Plaintiffs' remaining unjust enrichment claims under Rule 12(b)(6) is granted.

### 4. Counts III and IV: Securities Fraud

Finally, Plaintiffs' securities fraud claims, brought under Sections 10(b) and 20(a) of the Exchange Act and Securities and Exchange Commission Rule 10b-5, also fail as a matter of law. To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011) (internal quotation marks omitted); *accord Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 212 (2d Cir. 2020). To state a control-person claim under Section 20(a), a plaintiff must, at a minimum, plead a plausible "primary violation" of Section 10(b). *See, e.g., SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996).

In contrast to Plaintiffs' veil-piercing claims, these claims are plainly subject to the heightened pleading requirements of both Rule 9(b), which requires that the circumstances constituting fraud be "state[d] with particularity," Fed. R. Civ. P. 9(b), and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(2), which requires that scienter — that is, a defendant's "intention to deceive, manipulate, or defraud" — also be pleaded with particularity, *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U. S. 308, 313 (2007) (internal

quotation marks omitted).  To satisfy Rule 9(b), a plaintiff generally must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012).  To satisfy the PSLRA, a complaint must, "with respect to each act or omission alleged to [constitute securities fraud], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 88 n.14 (2d Cir. 2017) (quoting 15 U.S.C. § 78u-4(b)(2)); *see In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 22 (S.D.N.Y. 2016) (noting that a plaintiff "must allege facts supporting a strong inference with respect to each defendant").

Plaintiffs' allegations fall woefully short of meeting these standards.  Indeed, the Complaint fails to identify even one specific statement made by any remaining Defendant as the basis for Plaintiffs' securities fraud claims.  *See e.g.*, *Chien v. Skystar Bio Pharm. Co.*, 566 F. Supp. 2d 108, 115 (D. Conn. 2008) (dismissing claims where the complaint "ma[de] repeated allegations that [the defendant company's SEC] filings were inaccurate and false, without specifying which statements [in those filings the plaintiff] has in mind" (cleaned up)), *aff'd*, 378 Fed. App'x 109 (2d Cir. 2010); *In re Open Joint Stock Co. Vimpel-Commc'ns*, No. 04-CV-9742 (NRB), 2006 WL 647981, at *5 (S.D.N.Y. Mar. 14, 2006) (dismissing claims where "plaintiffs fail[ed] to identify which statements in [the defendant's SEC filings] were misleading").  The only specific statements identified in the entire Complaint are Dollinger's email statements to Plaintiffs about the repurchase obligation in the SPAs, but they were made well *after* Plaintiffs purchased the PlantX stock.  By failing to identify any specific statements that Defendants made in connection with the sale of the stock, Plaintiffs do not allege "precisely what material

misstatements were made, the time and place of each misstatement, the speaker, [and] the content" as required by Rule 9(b).  *See Sec. & Exch. Comm'n v. Terraform Labs Pte. Ltd.*, 684 F. Supp. 3d 170, 200 (S.D.N.Y. 2023) (internal quotation marks omitted).  Accordingly, Plaintiffs' securities fraud claims under Section 10(b) and Rule 10b-5 must be and are dismissed.  That, in turn, dooms their "control person" claims under Section 20(a).  *See, e.g., First Jersey Sec.*, 101 F.3d at 1472.

Accordingly, Defendants' motion to dismiss Plaintiffs' securities fraud claims against all remaining Defendants is granted.

## PLAINTIFFS' MOTION FOR PRELIMINARY RELIEF

That leaves Plaintiffs' motion for preliminary relief pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.  That motion is denied as moot with respect to all Defendants other than PlantX and Dollinger because Plaintiffs' claims have been dismissed.

With respect to PlantX and Dollinger, there is no basis for a preliminary injunction under Rule 65.  In general, "district courts have no authority to issue a prejudgment asset freeze pursuant to Rule 65."  *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 131 (2d Cir. 2014).  That said, district courts do "maintain the equitable power to do so where such relief *was* traditionally available: where the plaintiff is pursuing a claim for equitable relief and the preliminary injunction is ancillary to the final relief."  *Id.* (citation omitted) (discussing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999)).  But that limited exception does not apply here because Plaintiffs' sole remaining claims — for breach of contract against PlantX and Dollinger — sounds in law rather than equity.  *See Citigroup Inc. v. VDN Sys., Inc.*, No. 08-CV-7527 (SHS), 2008 WL 5274091, at *2 (S.D.N.Y. Dec. 16, 2008) ("[A]ctions seeking damages for breach of contract are traditionally considered to be legal in nature.").  Moreover,

Plaintiffs' request essentially "seek[s] security for a potential future award of money damages" and was motivated by a "feared inability to collect a prospective judgment." *Coley v. Vannguard Urb. Improvement Ass'n, Inc.*, No. 12-CV-5565 (PKC) (RER), 2016 WL 7217641, at *3 (E.D.N.Y. Dec. 13, 2016) (internal quotation marks omitted). In these circumstances, the Court is barred from granting Plaintiffs' requested preliminary relief. *See e.g., JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 389 (S.D.N.Y. 2003) ("A preliminary injunction in this case would be issued in aid of the collection of a money judgment, not final equitable relief, an outcome barred by *Grupo Mexicano*."); *Dong v. Miller*, No. 16-CV-5836 (NGG) (JO), 2018 WL 1445573, at *9 (E.D.N.Y. Mar. 23, 2018) ("Under *Grupo Mexicano*, the court may not enter a preliminary injunction simply to safeguard Defendants' assets in the event that Defendants are ultimately held liable on these claims.").

Nor have Plaintiffs demonstrated that they are entitled to attachment under Rule 64. "Rule 64 permits federal litigants to seek an order of attachment to secure satisfaction of a potential judgment in accordance with the laws of the state in which the district court sits." *Telebrands Corp. v. Guangzhou Alpaca Home Furnishing Co., Ltd.*, No. 25-CV-3646 (JAV), 2025 WL 1591970, at *9 (S.D.N.Y. June 5, 2025). "Under New York law, a plaintiff may obtain an order of attachment if it demonstrates that (1) it has stated a claim for a money judgment; (2) it has a probability of success on the merits; (3) the defendant, 'with the intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered, or secreted property, or removed it from the state or is about to do any of these acts,' and (4) the amount demanded from the defendant is greater than the amount of all counterclaims known to plaintiff." *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 318-19 (E.D.N.Y. 2009) (quoting N.Y. C.P.L.R. §§ 6212(a), 6201(3)).

Significantly, Plaintiffs "bear[] a heavy burden in attempting to establish [their] right to an attachment, because New York attachment statutes are construed strictly against those who seek to invoke the remedy." *Ally Bank v. Reimer*, No. 09-CV-2795 (ADS) (WDW), 2010 WL 446025, at *2 (E.D.N.Y. Jan. 29, 2010) (internal quotation marks omitted).  Here, Plaintiffs fail to carry that "heavy burden" for the simple reason that their "moving papers" do not contain the requisite "evidentiary facts — as opposed to conclusions — proving the fraud." *Colon v. Cole Bros. Circus, Inc.*, Nos. 03-CV-3606, 03-CV-3607, 03-CV-4305 (JFB) (JO), 2007 WL 3014706, at *2 (E.D.N.Y. Oct. 12, 2007) (Bianco, J.) (quoting *Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326, 331-32 (2d Cir. 1983)); *see also Man Wei Shiu v. New Peking Taste Inc.*, No. 11-CV-1175 (NGG) (RLM), 2013 WL 2351370, at *18 (E.D.N.Y. May 28, 2013) ("[C]ourts issuing orders of prejudgment attachment on the basis of fraudulent transfers usually rely on a plethora of evidence of fraudulent intent."), *aff'd sub nom. Man Wei Shiu v. Jung & Assocs. L. Off. P.C.*, 559 Fed. App'x 105 (2d Cir. 2014) (summary order).  Indeed, Plaintiffs have failed to submit *any*, much less a *plethora*, of competent evidence proving PlantX's and Dollinger's fraudulent intent.  Accordingly, their request for pre-judgment attachment under Rule 64 is also denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) is GRANTED as to all claims against all Non-Signatory Defendants other than the securities fraud claims and otherwise DENIED.  Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) is DENIED as to Plaintiffs' breach of contract claim against Dollinger and otherwise GRANTED.  (Because Defendants did not move to dismiss Plaintiffs' breach of contract claim against PlantX, that claim obviously also survives.)  Finally, Plaintiffs' motion for preliminary relief is DENIED.

Further, the Court declines to *sua sponte* grant Plaintiffs leave to amend. Although leave to amend a pleading should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), "it is within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Here, the Court has already granted Plaintiffs leave to amend, *see* ECF No. 78, and they have neither filed an amended complaint nor suggested that they possess any additional facts that could cure the defects in their dismissed claims, *see, e.g., Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint."); *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019). Additionally, the Court expressly warned Plaintiffs that they would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." *See* ECF No. 78; *see also, e.g., Overby v. Fabian*, No. 17-CV-3377 (CS), 2018 WL 3364392, at *14 (S.D.N.Y. July 10, 2018) ("Plaintiff's failure to fix deficiencies in his previous pleading, after being provided ample notice of them, is alone sufficient ground to deny leave to amend *sua sponte*.").

Unless and until the Court orders otherwise, Defendants shall file their Answer to Plaintiffs' remaining claims — the breach of contract claims against Defendants Dollinger and PlantX — within three weeks of the date of this Opinion and Order. *See* Fed R. Civ. P. 12(a)(4)(A). In addition, the initial pretrial conference, previously adjourned, is hereby reinstated and RESCHEDULED for **August 20, 2025, at 9:00 a.m.** To access the conference, counsel should call the Court's dedicated conference call line at (855) 244-8681 and use access code 2303 019 3884, followed by the pound (#) key. When prompted for an attendee ID

number, press the pound (#) key again.  The parties are reminded to follow the procedures for telephone conferences described in the Court's Individual Rules and Practices for Civil Cases, which are available at https://nysd.uscourts.gov/hon-jesse-m-furman, including Rule 3(B)(i), which requires the parties, no later than twenty-four hours before the conference, to send a joint email to the Court with the names and honorifics (e.g., Mr., Ms., Dr., etc.) of counsel who may speak during the teleconference and the telephone numbers from which counsel expect to join the call.  The parties are reminded that, no later than the Thursday before the initial pretrial conference, they must submit a joint status letter and proposed Case Management Plan.  ECF No. 5.  The Clerk of Court is directed to terminate ECF Nos. 8 and 75.

        SO ORDERED.

Dated: June 30, 2025
       New York, New York                          _____
                                                          JESSE M. FURMAN
                                                   United States District Judge